478 Pa. 532 (1978)
387 A.2d 449
COMMONWEALTH of Pennsylvania, DEPARTMENT OF INSURANCE, William J. Sheppard, Insurance Commissioner, Appellant,
v.
AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA.
Supreme Court of Pennsylvania.
Argued October 20, 1977.
Decided April 28, 1978.
*533 Robert P. Kane, Atty. Gen., Gerald Gornish, Deputy Atty. Gen., for appellant.
Shaffer, Calkins & Balaban, Thomas R. Balaban, Harrisburg, for appellee.
Before EAGEN, C.J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

OPINION OF THE COURT
PER CURIAM.
Appellant, the Insurance Department of the Commonwealth of Pennsylvania, charged American Bankers Insurance Company of Florida (American) with a violation of certain provisions of the Pennsylvania insurance laws.[1] Following a hearing, American was found to have committed at least 110 violations and was accordingly fined $5500.00.[2] On appeal, the Commonwealth Court reversed. The ground of reversal was a lack of procedural due process in the hearing procedures of the Insurance Department which in turn had been caused by insufficient separation of the prosecutorial *534 and judicial functions. Commonwealth of Pennsylvania, Department of Insurance v. American Bankers Insurance Company of Florida, 26 Pa.Cmwlth. 189, 363 A.2d 874 (1976). We allowed the present appeal and now affirm.
The record discloses that one Andrew F. Giffen, Esquire, was Associate General Counsel of the Insurance Department and supervised the office within the department which initiated the present charges. It also appears that he signed and issued the citation charging the violations. Thereafter, Mr. Giffen was appointed a Deputy Insurance Commissioner and presided over the hearing in that capacity. In performing that function he ruled on questions of evidence, resolved questions of fact and drafted the proposed adjudication which was later signed by the Insurance Commissioner. Such a commingling of prosecutorial and adjudicatory functions in one individual offends fundamental notions of due process and is constitutionally impermissible. See Dussia v. Barger, 466 Pa. 152, 351 A.2d 667 (1975).
Order affirmed.
PACKEL, former Justice did not participate in the decision of this case.
NIX, J., filed a concurring opinion.
ROBERTS, J., filed a dissenting opinion.
ROBERTS, Justice, dissenting.
The majority affirms the order of the Commonwealth Court on the basis of an issue not raised by either party and upon which the Commonwealth Court did not pass. Moreover, the majority reaches the wrong result on the issue it decides. I dissent.
Andrew Giffen, Esquire, served as Associate General Counsel for appellant Department of Insurance, supervising the Department until he was appointed a deputy Insurance Commissioner. Approximately two months later, Giffen sat as hearing examiner in an agency adjudication of charges alleging violations of insurance laws by appellee American *535 Bankers Insurance Company. Because the attorney of the Department of Insurance presenting the Department's case had been a subordinate of Giffen's when Giffen was Associate General Counsel of the Department, appellee American Bankers objected to Giffen's participation as a hearing examiner, claiming that commingling of prosecutorial and adjudicatory functions had occurred. The Department of Insurance denied this objection. The Commonwealth Court reversed, concluding that Giffen's role as hearing examiner where a former subordinate argued the Department's case gave rise to an "appearance of impropriety" prohibited by due process. On this issue, the Department of Insurance petitioned this Court for allowance of appeal and we granted allocatur.
The parties have briefed and argued whether Pennsylvania Human Relations Commission v. Feeser, 469 Pa. 173, 364 A.2d 1324 (1976) renders invalid the Commonwealth Court's conclusion. The majority, however, does not address the issue raised by the parties but instead upholds the Commonwealth Court on another issue not raised. The majority holds that "commingling of prosecutorial and adjudicatory functions in one individual" occurred, denying appellee American Bankers due process of law, because Giffen, while Associate General Counsel of the Department of Insurance, the division of the Department initiating charges against appellee, signed and issued the citation against appellee. Because neither party has raised this issue, this Court may not consider it. Weigand v. Weigand, 461 Pa. 482, 337 A.2d 256 (1975).
Compounding its error, the majority erroneously decides the issue for which it has reached out. The majority's conclusion, contrary to the clear weight of precedent, including Dussia v. Barger, 466 Pa. 152, 351 A.2d 667 (1976), the only case cited by the majority, undermines the ability of state administrative agencies to perform the duties entrusted to them by the Legislature. Based on the issue presented, appellee was not denied due process.

*536 I.
The due process clause of the Fourteenth Amendment of the Constitution of the United States requires fair trials before impartial tribunals. Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955). This principle applies to the operation of both courts and administrative tribunals. Withrow v. Larkin, supra; Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). Decisions rendered by adjudicators with a financial interest in the outcome cannot stand without offending due process. Gibson v. Berryhill, supra; B. Schwartz, Administrative Law § 106 (1976); K. Davis, Administrative Law § 12.04 (1972).
Nor can agency adjudications be upheld where adjudicators are biased. Withrow v. Larkin, supra; B. Schwartz, supra at § 107. Actual bias, however, and not mere predeliction toward a particular result, must be proved. Withrow v. Larkin, supra; Federal Trade Comm'n. v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948).
Professor Schwartz describes the element of legal bias:
"Bias in law is narrower than bias in the dictionary. If freedom from bias is taken in the broad dictionary sense of absence of preconceptions, no one can ever have a fair trial. The judicial mind is no blank piece of paper; the judge or administrative adjudicator starts with inevitable preconceptions. In this sense there is prejudgment in every case. But does such prejudgment constitute legal bias?
"When adjudicatory proceedings reach a predetermined end, they may be fair only in form. As the Preceptor in Ivanhoe puts it, `the trial moves rapidly on when the judge has determined the sentence beforehand.' Yet there are some types of prejudgment which give no difficulty, even though they may help to determine the decision beforehand. The accused in an armed robbery case may not have the judge who is known for his strictness in *537 such cases disqualified. Similarly, a member of the Federal Communications Commission known for his vigorous policy against concentration of ownership in broadcasting is permitted to sit in cases involving the policy. The same is true where an agency states, in the notice instituting a rate proceeding, its belief that existing rates are too high, or a member of a rate-fixing agency is elected on a campaign pledge to change railroad rates or is appointed by a governor who had been elected on a platform to reduce telephone rates. In all of these cases, there may be a predeliction toward the given decision; but it is general in nature and does not prevent the agency members from deciding the particular case fairly."
B. Schwartz, supra at § 108 (footnotes omitted). Accord, B. Cardozo, The Nature of the Judicial Process 167-68 (1921).
The Supreme Court of the United States in Federal Trade Commission v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948), recognized that an adjudicator's predeliction toward a given result cannot alone justify a conclusion of bias. There, companies against whom the FTC had instituted proceedings charging price-fixing argued that FTC Commissioners were biased because they had previously stated that the companies were violating anti-trust laws. Rejecting the companies' argument, the Court concluded:
"[No] decision of this Court would require us to hold that it would be a violation of procedural due process for a judge to sit in a case after he had expressed an opinion as to whether certain types of conduct were prohibited by law. In fact, judges frequently try the same case more than once and decide identical issues each time, although these issues involve questions both of law and fact. Certainly, the Federal Trade Commission cannot possibly be under stronger compulsion in this respect than a court."
Id. at 702-703, 68 S.Ct. at 804 (footnote omitted). See Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); National Labor Relations Board v. Donnelly Garment Co., 330 U.S. 219, 67 S.Ct. 756, 91 L.Ed. 854 (1947).
*538 For this reason, involvement of an adjudicator in the decision to initiate proceedings does not, by itself, constitute a denial of due process; as where an adjudicator has expressed an opinion contrary to a party's position actual bias still must be shown. Withrow v. Larkin, supra. Mr. Justice White, speaking for a unanimous Court, explains:
"The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented."
Id. 421 U.S. at 47, 95 S.Ct. at 1464.
In Withrow, a licensed physician challenged the constitutionality of the action of a state examining board empowered to investigate and adjudicate alleged professional misconduct. In rejecting the argument that the board's power to adjudicate and investigate created a constitutionally intolerable bias, the Court concluded:
"The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing. Without a showing to the contrary, state administrators `are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' United States v. Morgan, 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941)."
Id. 421 U.S. at 55, 95 S.Ct. at 1468.
Withrow simply applied existing law. More than a decade earlier, the United States Court of Appeals for the District of Columbia specified the degree of participation in investigation *539 and prosecution which disqualifies an individual from sitting as trier of fact. In Amos Treat & Co. v. Securities and Exchange Commission, 113 U.S.App.D.C. 100, 306 F.2d 260 (1962), the hearing examiner had previously served as director of the Commission's Division of Corporation Finance, where he had initiated the investigation against the appellant, weighed the evidence discovered, apparently recommended filing of charges, and appeared before the Commission in related proceedings on similar issues to advocate the Division's position against certain parties, including the appellant. The court held that the examiner could not hear the appellant's case without violating due process. The court noted, however, that where a Commissioner had merely participated in decisions of the agency to conduct an investigation and to conclude that charges should be filed, he properly could hear the case. Id. 113 U.S.App.D.C. at 106, 306 F.2d at 266.
This reasoning formed the basis for R.A. Holmes & Co. v. Securities and Exchange Commission, 366 F.2d 446 (2d Cir. 1966), cert. denied, 389 U.S. 991, 88 S.Ct. 473, 19 L.Ed.2d 482 (1968), reh. denied, 389 U.S. 1060, 88 S.Ct. 767, 19 L.Ed.2d 867 (1968). There, the appellant asserted a denial of due process because one of the Commissioners hearing the case had two months previously served as director of the Division of Corporation Finance in the SEC when that Division brought charges against the appellant. Relying on Treat, the Court dismissed the allegations because the record did not show that the Commissioner, as director of the Division investigating the matter and bringing charges, had "engaged in the performance of investigative or prosecuting functions" related to the disputed hearing. Id. at 453.
"In this case, there is no indication that Commissioner Woodside, before his appointment to the Commission, participated in any investigation of petitioner's activities, and public proceedings to investigate petitioner's activities were not started until . . . two months after Woodside's appointment to the Commission. To disqualify Commissioner Woodside on the record before us would be *540 tantamount to disqualifying from participation in an SEC adjudication all personnel from the [investigatory and enforcement divisions] without regard to the extent of their connection with the proceeding in its investigatory stages, and would tend to prevent the appointment to the Commission of persons who have had experience with its work."
Id.
Subsequent federal decisions have adhered to the standard of Treat and Holman. In Sedule v. Capital School District, 425 F.Supp. 552 (D.Del. 1976), a discharged school administrator challenged as unconstitutional a hearing conducted by the Board of Education because it had instructed its attorneys to begin proceedings against him. The court held that the plaintiff's allegation, unsupported by any evidence that the Board was biased and contradicted by a record showing full and impartial questioning of witnesses by the Board, was alone insufficient to show a violation of due process. Compare Barszcz v. Board of Trustees of Community College District No. 504, Cook County, Illinois, 400 F.Supp. 675 (N.D.Ill. 1975), aff'd, 539 F.2d 715 (7th Cir. 1976), cert. dismissed, 429 U.S. 1080, 97 S.Ct. 827, 50 L.Ed.2d 801 (1977) (no violation of due process in dismissal of tenured college teacher by Board of Trustees which passed initial resolution of termination, where record failed to reveal any evidence of actual bias) with King v. Caeser Rodney School District, 380 F.Supp. 1112 (D.Del. 1974) (due process violated where trier of fact previously examined all relevant evidence, concluded "just cause" existed for dismissal of teacher and stated that initial determination would stand unless new evidence was presented).
These cases demonstrate that an agency tribunal can constitutionally pass upon an action even though it has previously had access to investigation reports, one of its members has previously served as director of the department responsible for investigation and institution of charges, or one or more of its members has caused charges to be brought against the complaining party. "Although . . *541 a staff member who conducts an investigation cannot after elevation to the agency itself adjudicate the case, this does not prohibit members of an administrative agency from being privy to investigative information for the purpose of determining whether the filing of a complaint charging violations of law or agency regulations is proper." Belsinger v. District of Columbia, 295 F.Supp. 159, 163 (D.D.C. 1969), rev'd on other grounds, 141 U.S.App.D.C. 60, 436 F.2d 214 (1970). Accord, Note, Prejudice and the Administrative Process, 59 Nw.U.L.Rev. 216, 226 (1964).
Our own cases have followed the standard developed in the federal courts. Where the conduct of an agency official has not amounted to actual participation in prosecution and investigation, we have rejected a claim of denial of due process. For example, in Pennsylvania Human Relations Commission v. Feeser, 469 Pa. 173, 364 A.2d 1324 (1976), counsel for the PHRC, on behalf of complainants, argued before the Commission and presented evidence. We held that no commingling of functions denying due process had occurred for only a specific showing of impropriety would establish that due process had been offended. Because the petitioner had not presented evidence showing unconstitutional impropriety, the allegation that commingling created an appearance of impropriety was insufficient.[*]
*542 On the other hand, we have upheld due process claims where commingling of adjudicatory with prosecutorial and investigatory functions occurred. In Dussia v. Barger, 466 Pa. 152, 351 A.2d 667 (1976), we invalidated a state police field regulation giving the Commissioner of State Police authority to decide whether a disciplinary board should be convened to investigate practices of state troopers and make recommendations whether court-martial proceedings should be initiated. We held that this regulation, vesting the Commissioner with sole discretion to investigate and determine whether a purely advisory panel should be convened, coupled with the Commissioner's statutory authority to determine guilt or innocence as well as the sanctions to be imposed, see Administrative Code of 1929, Act of April 9, 1929, P.L. 177, § 711, 71 P.S. § 251 (as amended 1962), constituted an unconstitutional commingling of investigative and adjudicative functions in the Commissioner of State Police. The regulation required that the Commissioner of State Police begin investigations, weigh the evidence, determine whether a violation had occurred, bring charges and determine guilt or innocence. We could not find fairness in a scheme allowing one person to initiate prosecution, adjudicate and impose sanctions in the same case. In such a situation, there existed the "great possibility" of actual bias prohibited by Withrow v. Larkin, supra, 421 U.S. at 57, 95 S.Ct. at 1469; see Amos Treat & Co. v. Securities and Exchange Commission, supra.
In Horn v. Township of Hilltown, 461 Pa. 745, 337 A.2d 858 (1975), the same attorney represented both the zoning board and the township which had opposed the appellant's request for a variance. The attorney conducted the hearing, made objections to evidence offered by the appellant and ruled on those objections, offered his own evidence and ruled against objections entered by the appellant and later advised the Board on the merits of the request. We held that the appellant had been deprived of due process because an individual had participated in both prosecutorial and adjudicatory functions to an unacceptable degree. In Re Schlesinger, *543 404 Pa. 584, 172 A.2d 835 (1961), also illustrates the degree of commingling of functions which rises to a violation of due process. There, during the McCarthy era, the president judge of the court of common pleas appointed a panel of fifteen attorneys for the sole purpose of beginning disbarment proceedings against attorneys, including the appellant, allegedly connected to the Communist Party. After bringing charges of unprofessional conduct, the panel selected three of its members to hear the case. We found that participation by the panel members in both prosecutorial and adjudicatory functions was unfair. The judges of the cause were not tangentially related to the investigation and prosecution, but had been appointed to a subcommittee of the investigatory body expressly for the purpose of hearing charges they had brought against Schlesinger.
Thus, our cases indicate clearly that a concrete showing of direct participation in prosecutorial and adjudicatory functions giving rise to inherent unfairness, as found in Dussia, Schlesinger, and Horn, is necessary to establish actual bias. Mere appearance of commingling between these functions, without more, will not render invalid agency adjudications. Here, Giffen supervised the division of the Department of Insurance before he was appointed hearing examiner in the case against American Bankers. The record does not show that his adjudication was influenced in any way by his general association with that division. See R.A. Holman & Co. v. Securities and Exchange Commission, supra. No consultation between the prosecuting attorney and Giffen appears on the record. See Pennsylvania Human Relations Commission v. Feeser, supra. Giffen sat as examiner nearly two months after leaving the Department of Insurance. See R.A. Holman & Co. v. Securities and Exchange Commission, supra. In short, appellant can point to no facts demonstrating that Giffen assisted the development of the case by the Department's attorney or otherwise behaved unfairly. See Barszcz v. Board of Trustees of Community College District No. 504, Cook County, Illinois, supra. In these circumstances, the conclusion that Giffen prejudged *544 the case is simply speculation; American Bankers has not demonstrated specific facts concerning the hearing either as administered or structured establishing that Giffen's earlier supervisory responsibilities created a "great possibility" of actual bias in his role as hearing examiner. Withrow v. Larkin, supra, 421 U.S. at 57, 95 S.Ct. at 1469; see, e.g., In Re Schlesinger, supra.
Relying on Dussia v. Barger, supra, the majority correctly observes that Giffen signed and issued the citation charging American Bankers with violating the insurance laws. But signing and issuing cannot be equated with investigating, directing, or any other involvement with the Department of Insurance's case against American Bankers. See Withrow v. Larkin.
"Our cases . . . offer no support for the bald proposition. . . that agency members who participate in an investigation are disqualified from adjudicating."
Withrow v. Larkin, supra, 421 U.S. at 52, 95 S.Ct. at 1467 (citing 2 K. Davis, Administrative Law Treatise § 13.02 (1958)). Nothing in the record demonstrates that Giffen performed anything more than a perfunctory act when he signed and issued the citation against American Bankers. American Bankers has not demonstrated that the Department of Insurance is organized in such a way that Giffen held authority, as in Dussia, to prosecute. Nor does any statute or regulation relating to the operation of the Department support such a conclusion. To the contrary, by statute, only the Commissioner of Insurance has that authority. Act of June 11, 1947, P.L. 551, §§ 13(d), 16, 40 P.S. §§ 1233(d), 1236(a) (1971). Thus, the majority's reliance upon Dussia v. Barger, supra, is misplaced.
Accordingly, appellee was not denied due process because Giffen served as Associate General Counsel of the Department of Insurance before sitting as hearing examiner.

II.
Nor was appellee denied due process because a former subordinate of Giffen's argued the Department's case when *545 Giffen served as hearing examiner. Appellee's contention fails for the reasons set forth in Part I of this opinion. Appellee alleges, without support in the record, that a commingling of functions occurred creating an appearance of impropriety prohibited by due process. As in Feeser, appellee has not demonstrated that the Department's prosecuting attorney engaged in any improper conduct with Giffen. Consequently, where such evidence is absent, Giffen's previous supervisory responsibilities cannot establish a violation of due process. See Withrow v. Larkin, supra; R.A. Holman & Co. v. Securities and Exchange Commission, supra; Amos Treat & Co. v. Securities and Exchange Commission, supra; Pennsylvania Human Relations Commission v. Feeser, supra.
The majority's disposition is supported by neither the record nor precedent. It casts doubt over the ability of administrative agencies to perform the duties with which they have been entrusted by the Legislature. It ignores the presumption of Withrow v. Larkin that agency adjudicators are honest and impartial, and serves to deter agencies from promoting to the ranks of hearing examiners the most experienced members of their enforcement divisions. Finally, it nullifies what in every respect appears to be a valid agency disposition. I would reverse the order of the Commonwealth Court and reinstate the order of the Department of Insurance.
NIX, Justice, concurring.
I agree that the order of the Insurance Commissioner should have been reversed and therefore I agree with the result reached by the Commonwealth Court and the majority of this Court.
I accept the premise of Mr. Justice ROBERTS, as set forth in his dissent, that a mere tangential involvement of an adjudicator in the decision to initiate proceedings is not alone sufficient to establish that the proceedings are violative of due process. Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); FTC v. Cement Institute, 333 *546 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948). However, this record is far from clear in establishing that Mr. Giffen's role in the prosecutorial stage did not constitute "actual participation in prosecution". To the contrary, my reading of this record supports the conclusion that the Deputy Commissioner was significantly involved in the prosecution stage in this matter. See Dussia v. Barger, 466 Pa. 152, 351 A.2d 667 (1976).
NOTES
[1] The violations involved Section 3 of the Fire, Marine and Inland Marine Rate Regulatory Act of June 11, 1947, P.L. 551, as amended, 40 P.S. § 1223. The Department charged that the failure of American to act in accordance with regulations (see 31 Pa.Code § 112.5(6)) issued pursuant to the above statute resulted in its charging excessive rates.
[2] Section 15 of the Act, supra, n. 1, authorizes the imposition of fines up to $50 for each violation of Section 3 of the Act.
[*] Gardner v. Rapasky, 434 Pa. 126, 252 A.2d 704 (1969) (semble) (dictum), relied upon by the Commonwealth Court, on its face suggests that participation as a Civil Service Commission adjudicator or a former member of the department which brought the complaint is by itself a denial of due process even though the adjudicator did not take part in filing the complaint. The language to that effect, however, was dictum. Moreover, the opinion does not indicate how closely connected the adjudicator had been to the investigation, the extent of his duties while in the department, the interval that passed between his membership in the department and his participation on the Civil Service Commission or any other fact which may have impelled the court's conclusion. Gardner, which based its dictum on the concept that due process prohibits the mere "appearance of bias," also appears contrary to Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), which requires a "great possibility" of actual bias. Consequently, the dictum in Gardner is unpersuasive.