**Karen M. HETMAN, Petitioner,**

v.

**STATE CIVIL SERVICE COMMISSION (BERKS COUNTY CHILDREN AND YOUTH), Respondent.**

**Dania B. OJEDA, Petitioner,**

v.

**STATE CIVIL SERVICE COMMISSION (BERKS COUNTY MENTAL HEALTH/MENTAL RETARDATION PROGRAM), Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 5, 1998.

Decided July 24, 1998.

---

Bruce M. Ludwig, Philadelphia, for petitioners.

Janice Klinger, Philadelphia, for respondent.

Before McGINLEY and KELLEY, JJ., and LORD, Senior Judge.

KELLEY, Judge.

Karen Hetman and Dania B. Ojeda (collectively referred to as Petitioners) petition for review of the State Civil Service Commission's (Commission) determination. The Commission ordered that Petitioners be suspended from their employment with the Berks County Mental Health/Mental Retardation Program (County) for thirty days for engaging in political activity prohibited by the Civil Service Act (Act).[1] We affirm the respective orders of the Commission.

Petitioners are unpaid union mobilizers for the Pennsylvania Social Services Union (PSSU). Their union activities include the regular distribution of various non-political union leaflets and other printed informational material to fellow County co-workers. In addition, Petitioner Hetman acts as a delegate to the Berks County Labor Council, a function which also entails the frequent distribution of printed material to fellow co-workers. Lawful distribution of both contract negotiation bulletins and general information from the Labor Council is routinely performed by Petitioner Hetman.

In November 1995, Petitioner Hetman received pamphlets from the Labor Council and was asked to distribute the material to her co-workers. She did so with assistance from Petitioner Ojeda. Petitioner Ojeda

---

1. Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §§ 741.1–741.1005.

eventually requested Rhonda Bates to help her distribute the pamphlets to the Children and Youth Service area. Bates took the pamphlets and read one of them. She discovered that the pamphlet contained anti-Republican material. Bates refused to distribute the pamphlets because they could get her into trouble and told Petitioner Ojeda that she should gather any pamphlets that had been distributed. Petitioner Ojeda then informed Petitioner Hetman of the political content of the pamphlet.

By letter dated November 8, 1995, a personnel analyst for the County sent a letter to John Wilk, Executive Director of the Commission, concerning the legality of Petitioners' activities on November 5, 1995. The Commission requested an investigation of Petitioners' activities and recommended that a hearing be held to determine whether Petitioners violated section 905.2(b)(7) and (10) of the Act.[2] These sections of the Act forbid civil servants from endorsing or soliciting votes for political candidates. The Commission agreed with the investigator's conclusion and scheduled a hearing to give Petitioners the opportunity to show cause as to why they should not be removed from their respective civil service positions.

Prior to the hearing, Petitioners filed a motion to dismiss asserting that the Commission commingled its adjudicatory and prosecutorial functions in violation of Petitioners' due process rights. In addition, the Petitioners alleged that the Act and the rules governing the Commission were unconstitutional in that they permit the same individuals to prosecute and adjudicate cases against civil servants. The Commission denied the motion by letter dated December 2, 1996.

The Commission held a hearing on December 3, 1996 pursuant to section 951(d) of the Act, 71 P.S. § 741.951(d).[3] The Commission assessed no burden in the case and allowed all parties to submit evidence and testify. By decision dated April 21, 1997, the Commission, by majority opinion,[4] determined that Petitioners violated section 905.2(b)(7) and (10) of the Act. Consequently, the Commission ordered that Petitioners be suspended for thirty days, the minimum penalty required by section 905.2(f) of the Act, 71 P.S. § 741.905b(f).[5] This appeal followed.[6]

Petitioners present the following issues for our review:[7] (1) whether the Commission violated constitutional due process guarantees when it commingled prosecutorial and adjudicatory roles while administering discipline on civil servants; (2) whether the Commission's findings are supported by substantial evidence and whether the Commission exercised reasonable discretion in making those findings; and (3) whether it violates constitutional due process guarantees, for the Board to decide a case in which credibility was the crucial issue when the majority who found against the Petitioners did not attend the hearing and thus could not fully assess the demeanor of the witnesses. In the interest of clarity, we will address the due process

---

2. *Added by* the Act of June 26, 1989, P.L. 47, 71 P.S. §§ 741.905b(b)(7) and (10).

3. Section 951(d) provides as follows:
   Notwithstanding any other provisions of this section, the commission may, upon its own motion, investigate any personnel action taken pursuant to this act and, in its discretion, hold public hearings, record its findings and conclusions, and make such orders as it deems appropriate to assure observance of the provisions of this act and the rules and regulations thereunder.

4. The Commission's vote was 2–1 with Chairman Barnett filing a dissenting opinion.

5. Section 905.2(f) provides:
   A person in the classified service who violates this section shall be removed from employment and funds appropriated for the position from which removed thereafter may not be used to pay the employe or individual: Provided, That, the commission at its discretion may impose a penalty of suspension without pay for at least thirty days, but not more than one hundred twenty days, if it finds that the violation does not warrant termination.

6. This court granted Petitioner's motion to consolidate the appeals by order dated June 11, 1997.

7. Our scope of review in a civil service case is whether constitutional rights have been violated, errors of law committed, or whether the findings of fact of the agency are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *DeMarco v. Pennsylvania Liquor Control Board*, 657 A.2d 1359 (Pa.Cmwlth.1995).

issues first then determine whether substantial evidence supports the Commission's findings.

## I. Due Process

Petitioners contend that the language of the Civil Service Act is unconstitutional on its face because it clearly confers upon the Commissioners the authority to act as both prosecutor and judge in cases involving charges of prohibited political activity. In particular, they cite section 951(d) of the Act which provides that the Commission may, upon its own motion, investigate any personnel action taken pursuant to this act and, in its discretion, make such orders as it deems necessary. Moreover, section 203(3) the Act, 71 P.S. § 741.203(3), states that it shall be the duty of members of the Commission to make investigations upon its own motion and, in its discretion, on petition of a citizen concerning any matter touching the enforcement of the provisions of this act. Similarly, the Commission's own rules provide that investigative hearings shall be convened at the sole discretion of the Commission and that the Commission may accept or reject recommendations made at public hearings. 4 Pa.Code §§ 93.4(d) and 105.18(a).

Additionally, Petitioners believe that, in affecting this statutory and regulatory language, the Commission commingles its prosecutorial and adjudicatory functions in such a manner that it violates their constitutionally protected due process rights. In doing so, Petitioners rely heavily on the Pennsylvania Supreme Court's decision in *Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992) in asserting that the Commission's commingling of its prosecutorial and adjudicatory functions creates an appearance of bias sufficient to support a violation of due process rights. We disagree with Petitioners' assertions for the following reasons.

In *Lyness* the Supreme Court stated:

[I]t would be both unrealistic and counterproductive to insist that administrative agencies be forbidden from handling both prosecutorial and adjudicatory functions, where such roles are parcelled out and divided among distinct departments or boards. Efficiency and cost-effectiveness are certainly desirable ends. Indeed, each administrative board and judge is ultimately a subdivision of ... the Commonwealth of Pennsylvania, but this does not render their collective work as prosecutors, investigators and adjudicators constitutionally infirm, nor create an imminent threat of prejudice.

What our Constitution requires, however, is that if more than one function is reposed in a single administrative entity, walls of division be constructed which eliminate the threat or appearance of bias. As then-Justice Nix stated so percipiently in concurrence in *American Bankers*, [478 Pa. 532, 387 A.2d 449(1978)] a "mere tangential involvement" of an adjudicator in the decision to initiate proceeding is not enough to raise the red flag of procedural due process. *American Bankers* ... However, where the very entity or individuals involved in the decision to prosecute are "significantly involved" in the adjudicatory phase of the proceedings, a violation of due process occurs.

529 Pa. at 546–47, 605 A.2d at 1209–10 (citations omitted).

The Supreme Court clarified its reasoning in *Stone and Edwards Insurance Agency v. Department of Insurance*, 538 Pa. 276, 648 A.2d 304 (1994) when it stated:

[T]he form of impermissible "appearance" of bias and partiality proscribed in *Lyness* must clearly be one that arises from an *actual* environment of commingled functions. Given the nature and constraints of our various governmental bodies, the question of due process reasonably involves an inquiry into the nature of the process *actually* provided. It does not require ... solely an inquiry into the comprehensive administrative authority granted to an individual ... without regard to whether the nature of the process actually utilized by that individual in administering authority sufficiently isolates relevant functions to preclude the appearance of bias, partiality or prejudice.

*Id.* at 281–82, 648 A.2d at 307.

The record in this matter reveals that the Commission has established the requisite

"walls of division" thereby protecting against unconstitutional commingling of their prosecutorial and adjudicatory functions. The Commission had no involvement in the investigation and decision to prosecute Petitioners for alleged political activity violations. Instead, the executive director of the Commission initiated an investigation into Petitioners' activities after receiving a letter dated November 8, 1995 from a personnel analyst employed by the County. Notes of Transcript (N.T.) pp. 19–23. The letter included a copy of the pamphlet Petitioners circulated to fellow employees in the County office. N.T. p. 19.

Upon receipt of the letter, the executive director referred the letter to the Deputy of Operations who in turn forwarded the letter to the Division of Investigation Verification of the Commission. N.T. p. 47. At that point, the chief of the investigation division interviewed Petitioners, union representatives and other material witnesses. After completing his investigation of the matter, the chief of the investigation division recommended to the executive director that the matter be referred for hearing. N.T. 57. The executive director then filed a "Request for 951(d) Hearing" with the Commissioners which indicated that Petitioners may have violated sections 905.2(b)(7) and (10) of the Act. *See* Item 5 of the Certified Record (C.R.), Exhibit A–3.

At a meeting held on February 20, 1996, pursuant to section 202 of the Act, 71 P.S. § 741.202,[8] the Commissioners directed that a section 951(d) hearing be convened to determine whether Petitioners violated the previously listed sections of the Act. Item 5 of the C.R., Exhibit A–4. By letters dated June 27, 1996, Chairman Barnett of the Commission notified Petitioners of their possible violations of the Act for distributing partisan political brochures in the workplace. C.R., Items 2–4. The letters also notified Petitioners that a hearing had been scheduled pursuant to section 951(d) of the Act, so as to provide them the opportunity to show cause as to why they should not be removed from their respective civil service positions. *Id.*

Additionally, there is no evidence in the record that the Commissioners and the attorney assigned to represent the Commission discussed the matter either before or after the hearing. The attorney did not act on behalf of the Commissioners at the hearing, nor advise them during deliberations. The only information the Commissioners did receive prior to the hearing was contained in letters from the attorney requesting subpoenas for witnesses. C.R., Items 8 and 10.

■ We recognize that the language of the Act and the related sections of the Pennsylvania Code assigns to the Commission prosecutorial and adjudicatory roles. This language, however, belies the fact that the Commission is comprised of distinct divisions each having been delegated a particular function. Based on our review of the Commission's procedure, we conclude that separations imposed within the Commission satisfactorily create the judicially defined "walls of division" between prosecutorial and adjudicatory functions.

The Supreme Court has declared that a question of due process reasonably involves an inquiry into the nature of the process actually provided. *Lyness; Stone and Edwards Insurance Agency.* This inquiry must reveal that *actual* commingling exists before a violation of an individual's due process rights can be found. Here, the procedures implemented by the Commission sufficiently isolate the relevant functions of investigating, prosecuting and adjudicating so as to preclude any appearance of bias, partiality or prejudice ensuring that Petitioners received all guarantees of due process.

Petitioners also contend that they were not provided with the meaningful opportunity to be heard in violation of their due process rights. They specifically note that only one

---

**8.** Section 202 provides:

The commission shall meet at least once each month, except that meetings may be omitted during two summer months. The chairman of the commission shall cause reasonable notice to be given to each member of the commission and to the director of the time and place of each meeting. Meetings shall be held at the call of the chairman, the Governor, or any member of the commission. Two members of the commission shall constitute a quorum at any meeting.

of the commissioners, Chairman Barnett, actually attended the hearing and she offered a dissent to the majority opinion partly based on different credibility determinations. Petitioners argue that a majority of the Commission should have attended the hearing in order to have a meaningful review in accordance with constitutional due process requirements.

■ While we agree that a fact finder's observation of the demeanor of a witness is important in determining credibility, this court has held administrative adjudicators may determine credibility from the reading of a transcript. *Cavanaugh v. Fayette County Zoning Board,* 700 A.2d 1353 (Pa.Cmwlth. 1997); *Caldwell v. Clearfield County Children Youth Services,* 83 Pa.Cmwlth. 49, 476 A.2d 996 (1984). In addition, this court has stated that the Civil Service Act does not require that hearings be conducted before the full Commission. *Fleming v. State Civil Service Commission,* 13 Pa.Cmwlth. 421, 319 A.2d 185 (1974); *Siegel v. State Civil Service Commission,* 9 Pa.Cmwlth. 256, 305 A.2d 736 (1973). Due process is satisfied if a hearing is held before one Commissioner, with the other members subsequently reviewing the testimony before preparing their adjudication. *Id.; see also William J. McIntire Coal Co. v. Department of Environmental Resources,* 108 Pa.Cmwlth. 443, 530 A.2d 140 (1987), *petition for allowance of appeal denied,* 518 Pa. 614, 540 A.2d 536 (1988).

■ In this matter, the majority stated in their adjudication that all of the Commissioners had reviewed the notes of the testimony including all exhibits introduced at the hearing. Commission's Adjudication, p. 5. Their declaration is supported by the thorough review of the evidence contained in the analysis section of their adjudication. Accordingly, the Commission did not contravene Petitioners' due process rights when the majority of the Commission did not observe Petitioners' demeanor firsthand, but rather, relied upon a thorough review of the transcript in making their credibility determinations, findings of fact and conclusions of law.

## II. Substantial Evidence

Petitioners maintain that the Commission's finding that Petitioners' knowingly engaged in prohibited political activity is not supported by substantial evidence.[9] In particular, Petitioners argue that because they were unaware of the contents of the pamphlets they distributed, the determination of the Commission is not supported by substantial evidence. This finding, however, is irrelevant to the Commission's legal conclusion that Petitioners violated the Act by engaging prohibited political activity.

In *DeMarco v. Pennsylvania Liquor Control Board,* 657 A.2d 1359, 1361–62 (Pa. Cmwlth.1995), this court held that section 905.2 of the Act, 71 P.S. § 741.905b, does not require that a civil servant intentionally violate the act in order to be subject to discipline. Consequently, we declared that any evidence concerning Petitioner's knowledge or lack of knowledge of the prohibition against political activity is not relevant. *Id.* Although *DeMarco* is factually dissimilar to this case, it does reveal the immateriality of Petitioners' awareness of the contents of the pamphlet.

In *DeMarco,* petitioner, who was employed in a classified service position filed a nominating petition for the office of city council in the City of Hazelton. *Id.* at 1360. Upon being informed by his district manager that he was violating the Act by engaging in political activity, petitioner stated that he was not aware of the prohibition and informed his manager that the cut-off date to withdraw from the election had already passed. *Id.* Following an investigation and hearing, the Commission dismissed petitioner from his employment and we affirmed. *Id.* at 1361, 1363.

---

9. The Commission is the sole fact finder in civil service cases and has exclusive authority to assess witness credibility and to resolve evidentiary conflicts. Western Center, *Department of Public Welfare v. Hoon,* 143 Pa.Cmwlth. 212, 598 A.2d 1042, 1044 (1991). In addition, the prevailing party is entitled to the benefit of every inference which can be logically and reasonably drawn from the evidence viewed in the light most favorable to the prevailing party. *Herzog v. Department of Environmental Resources,* 166 Pa. Cmwlth. 114, 645 A.2d 1381, 1387 (1994).

■ Based on the factual circumstances, our conclusion in *DeMarco* embodies the axiom that ignorance of the law is no excuse. This conclusion, however, is grounded in our initial holding that a violation of section 905.2 of the Act, need not be intentional in order for the Commission to take disciplinary action.[10] *Id.* at 1361. Here, Petitioners' actions are not eviscerated by their supposed lack of awareness of the contents of the partisan political pamphlet. This is particularly true given the fact that Petitioners were aware of the prohibition on political activity, but still distributed the pamphlets.[11] Possessing this knowledge, Petitioners should have been more vigilant in discovering the partisan nature of the pamphlets.[12] Therefore, we conclude that the Commission's finding that Petitioner's were aware of the contents is superfluous to their ultimate legal determination and we need not decide whether it is supported by substantial evidence.

■ Thus, we need only to ascertain whether the evidence of record supports the Commission's finding that Petitioners distributed partisan political pamphlets to fellow employees. Our review shows that Petitioners circulated partisan political pamphlets in the workplace. There is no doubt that the pamphlets endorsed the Democratic Party while clearly expressing opposition to Republican Party candidates. This evidence alone is sufficient to support the Commission's legal conclusion that Petitioners committed a technical violation of the Act. Once the Commission concluded that Petitioners engaged in the prohibited conduct, it properly invoked section 905.2(f) of the Act and prescribed a thirty-day suspension.[13]

Accordingly, we affirm the respective orders of the Commission.

## ORDER

AND NOW, this 24th day of July, 1998, the orders of the State Civil Service Commission, dated April 21, 1997, at Appeal Nos. 19157 and 19158, are affirmed.

10. In this matter, the Commission determined that Petitioners violated section 905.2(b)(7) and (10) of the Act. These sections specifically provide:

(b) No person in the classified service shall take an active part in political management or in a political campaign. Activities prohibited by this subsection include, but are not limited to, the following activities:
* * *
(7) Soliciting votes in support of or in opposition to a candidate for public office in a partisan election or a candidate for political party office.
* * *
(10) Endorsing or opposing a candidate for public office in a partisan election or a candidate for political party office in a political advertisement, a broadcast, campaign, literature or similar material.
"Partisan" is defined in section 905.2(g)(6) of the Act, 71 P.S. § 741.905b(g)(6), as an adjective which refers to a political party.

11. The union must also have been aware of the prohibition on political activity by civil servants in the workplace. It is an unfortunate circumstance that the PSSU would request Petitioners to engage in prohibited political activity given the level of discipline the Commission may impose.

12. Petitioners' vigilance would have required a modicum of effort as the front page of the pamphlet states:

We must vote the Republicans out and stop the harassment, abuse and unfair treatment of our brothers, sisters and co-workers. This is your chance to elect your bosses! Elect Democrats who will treat us with respect and dignity—not contempt.
Commission's Adjudication p. 9.

13. We note that the Commission did impose the minimum sentence allowed pursuant to section 905.2(f), because Petitioners were laboring under the impression that their actions were supported by the PSSU and were of limited duration. Given the circumstances, we agree that this sanction is severe, but the Commission is required by law to follow their statutory directives.