**Robert J. ROMANICK, Appellant**

v.

**RUSH TOWNSHIP and the Rush Township Board of Supervisors.**

Commonwealth Court of Pennsylvania.

Argued March 12, 2013.

Decided April 4, 2013.

Sean T. Welby, Harrisburg, for appellant.

Eric M. Brown, Chester Springs, for appellees.

BEFORE: PELLEGRINI, President Judge, SIMPSON, Judge (P.), COLINS, Senior Judge.

OPINION BY President Judge PELLEGRINI.

Robert J. Romanick (Romanick) appeals from the Schuylkill County Court of Common Pleas' (trial court) August 9, 2012 order affirming the Rush Township (Township) Board of Supervisors' (Supervisors) decision and entering judgment in favor of the Township and the Supervisors. There are four issues for this Court's review: (1) whether Romanick was removed from his position; (2) whether the Township failed to comply with the Police Tenure Act (Tenure Act),[1] the Second Class Township Code (Township Code)[2] and due process; (3) whether Romanick engaged in activity prohibited by the Tenure Act; and (4) whether the Township failed to establish that the proven charges were sufficient to warrant Romanick's removal. We affirm.

Romanick was employed as the Township's Police Chief from 2005 to January 4, 2009, when the Supervisors removed him as police chief, demoting him to patrolman without proffering charges against him. Romanick filed a mandamus action in the trial court seeking to enforce his demand for a Statement of Charges against him and a hearing under the Tenure Act. Section 912 of the Township Code provides that:

> No person employed as a regular full-time police officer in any police department, except officers appointed for a probationary period of one year or less, shall be suspended, removed or reduced in rank except under the [**Tenure Act**], entitled "An act regulating the suspension, removal, furloughing and reinstatement of police officers in boroughs and townships of the first class having police forces of less than three members, and in townships of the second class." (Emphasis added).

53 P.S. § 66912. Section 2 of the Tenure Act specifies:

> No person employed as a regular full time police officer . . . shall be suspended, removed or reduced in rank except for the following reasons: (1) physical or mental disability affecting his ability to continue in service . . .; (2) **neglect or violation of any official duty;** (3) violating of any law which provides that such violation constitutes a misdemeanor or felony; (4) **inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer;** (5) intoxication while on duty . . . . A written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed. (Emphasis added).

53 P.S. § 812.

Because the Tenure Act provisions were not complied with, the parties agreed to an order in which the Supervisors were to provide Romanick with a Statement of Charges on or before December 20, 2009, and to provide him with a Tenure Act

---

1. Act of June 15, 1951, P.L. 586, No. 144, *as amended,* 53 P.S. §§ 811–816.

2. Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65101–68701.

hearing within 30 days of the issuance of the Statement of Charges.

The Supervisors then sent Romanick a letter on December 18, 2009, identifying the charges against him as "neglect of duty, incompetence" and "inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer," and citing several reasons for each charge. Reproduced Record (R.R.) at 29a. The Supervisors appointed a Hearing Officer who was to make findings and credibility determinations.

Before the Hearing Officer, the Township's Secretary/Treasurer Terri Conville (Conville) testified that Supervisor Marion Lazur and she had been asking Romanick for years to catalog the evidence room, but he refused. They finally gave him a written directive in response to which Romanick replied, "he'll get to it when he has time." R.R. at 117a, 434a. Conville also testified that she believed Romanick was at times disrespectful to the Supervisors and she heard him curse at them when they would give him directives. *Id.* at 103a.

Township Supervisor Stephen Simchak (Simchak) testified that Romanick purchased a rifle for over $1,000.00 with no prior approval from the Supervisors. R.R. at 161a–162a. He also related how he was on the phone with a part-time police officer explaining the policy regarding the use of new vehicles being restricted for full-time officers when the part-time officer began getting belligerent on the phone. Simchak asked Romanick to get on the phone so he could tell him to discipline the officer. Instead of getting on the phone, Romanick began cursing and became belligerent as well. The Supervisors subsequently disciplined both Romanick and the part-time officer. Romanick admitted that he never disciplined said officer. *See id.* at 346a. Simchak further testified that when the Supervisors would attempt to explain what the Solicitor wanted from Romanick, he would respond: "You are stupid, your solicitor is stupid. F this and F that. It's my F"in department and I'm going to do it the way I want to do it. You are all stupid." *Id.* at 163a. Simchak also testified about an incident on August 10, 2007, wherein Romanick "blew up" in the Township building and was very disrespectful to the Supervisors in the presence of Township employees. *Id.* at 131a, 439a.

Carol Simchak, Simchak's wife, testified that at a block party on July 4, 2006, in front of many people, she heard Romanick say " '[d]o you see that guy over there, that's Steve Simchak, he's the [S]upervisor. One day I'm going to punch him in the effing mouth.' But he did not say effing. He said the profanity." R.R. at 84a.

Carmen Forke (Forke), the Township's auditor, related how Romanick would refer to the Supervisors as a—holes and talk about how " '[t]hey don't know what they're doing.' " R.R. at 234a.

Romanick admitted during his testimony of having disdain for the Supervisors and that he was disrespectful to them at times. He further admitted that the Supervisors terminated his employment because of his disparagement of them, just as he would do, and did, to three officers under him, for the same reason. R.R. at 372a–375a.

Finding the testimony of Conville, Simchak, Carol Simchak, Forke and Romanick credible, the Hearing Officer found that the testimony supported both the neglect of duty/incompetence charge and the inefficiency, neglect, intemperance, disobedience of orders or conduct unbecoming an officer charge. The Hearing Officer specifically found clear and convincing evidence of neglect of duty/incompetence because the Township estab-

lished that Romanick failed to provide the Supervisors with regular, complete and accurate inventories of the contents of the evidence room in the police station; that he purchased an assault rifle on behalf of the police department, without proper prior approval of the Supervisors; and that he failed to discipline or reprimand an officer who had argued in a profane and disrespectful manner with one of the Supervisors.

Concerning the inefficiency, neglect, intemperance, disobedience of orders or conduct unbecoming an officer charge, the Hearing Officer concluded that the Township established by clear and convincing evidence that Romanick frequently made derogatory comments about one or more members of the Supervisors and specifically threatened to cause physical harm to Supervisor Simchak; frequently argued with and used profanity in his communication with the Supervisors, including specific incidents which occurred on or about March 28, 2007, and January 4, 2009; and that his behavior during his service as chief of police constituted a continuing pattern of improper and disrespectful treatment of Township employees and Supervisors.

The Supervisors adopted the Hearing Officer's decision and Romanick appealed to the trial court contending that several of the Hearing Officer's findings were not supported by substantial evidence and that his conclusions contained errors of law. Finding that the Hearing Officer's findings of fact and conclusions of law were supported by clear and convincing evidence, the trial court affirmed the Supervisors' decision.[3]

On appeal, Romanick contends that both the procedure used to remove him as police chief was flawed and that there was not substantial evidence to support his removal as police chief. We will address the procedural issues first.

### I.

### A.

Romanick initially contends that the Township should be estopped from arguing that he quit his position as police chief because substantial evidence shows that he was removed from his position as police chief and did not quit. We do not understand his argument. Everyone agrees that he was removed. Supervisors Simchak and Shawn Gilbert (Gilbert) testified at the hearing that on January 4, 2009, before the reorganization meeting, Romanick was advised that he would not be ap-

---

**3.** In *Andras v. Wyalusing Borough,* 796 A.2d 1047, 1050 (Pa.Cmwlth.2002). we explained the scope of review in cases involving the termination of a police officer's employment under the Tenure Act as follows:

In *Slawek v. State Board of Medical Education & Licensure,* 526 Pa. 316, 322, 586 A.2d 362, 365 (1991), the Pennsylvania Supreme Court set forth the following scope of review applicable to a challenge to a sanction imposed by an administrative agency:
[T]he proper review of the agency's action, assuming that it is not defective under the self-explanatory requirements of the Administrative Agency Law, is *not* whether its order was reasonable, but whether it was made in 'accordance with law' (i.e., whether it was made in bad faith, and whether it was fraudulent or capricious).... [A] reviewing court may interfere in an agency decision only when 'there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions.' (Emphasis in original; a citation and footnotes omitted.)

The scope of review under Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, considered in *Slawek* is equally applicable in reviewing the Borough Council's action under the virtually identical language in Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b).

pointed as police chief the following year. R.R. at 107a, 204a. For purposes of the Tenure Act, demotion and removal are treated the same. While there were findings by the Hearing Officer that the Township was not foreclosed from asserting that Romanick voluntarily quit his employment and that Romanick abandoned his employment, those findings are irrelevant because the Hearing Officer specifically found as fact that "Romanick was demoted to the position of patrolman and/or terminated from his position as Chief of the [Township] Police Department" and held that the Tenure Act applies to this case. *Id.* at 28a, 38a. Because Romanick was removed, he was entitled to a hearing which he received.

### B.

Romanick then argues that the Township failed to comply with the Tenure Act because, under the Tenure Act, when an individual is sought to be reduced in rank or removed from employment, the township must provide him a written Statement of Charges within five days of a reduction in rank or removal and a hearing before the appointing authority within ten days of a request for the same. Romanick avers that a Statement of Charges was not provided within five days of his removal and he was not given a hearing within ten days of his request.

■ First, just because charges are not initiated within the time required does not mean that a person removed or demoted gets his job back; it only means that the personnel action is ineffective until the charges are filed. *See, e.g., Appeal of*

*Nortum,* 67 Pa.Cmwlth. 18, 445 A.2d 871, 872 (1982) (Police Civil Service Commission's failure to hold hearing within ten days as required by Borough Code did not mandate decision in favor of employee seeking reinstatement absent specific statutory expression of a "deemed" decision). Second, as the Hearing Officer concluded:

> The issuance of charges in this matter and the conduct of hearing under the [Tenure Act] may not be challenged as untimely, as the same are the result of an Order of the [trial court] dated November 12, 2009, which Order was based upon a stipulation of the parties hereto.

R.R. at 38a. Romanick argues that because that Order included the following paragraph: "All of the rights and remedies provided under law remain available to [Romanick], and he is not waiving any such rights or remedies by virtue of this proceeding," *id.* at 18a, he is not waiving his right to argue that his removal was ineffective. However, that paragraph does not reestablish purported rights he stipulated away; rather, it provides that once the Statement of Charges is provided and the hearing takes place, all rights and remedies attach.

### C.

■ Because the Township Code provides that "[a]n affirmative vote of a majority of the entire board of supervisors at a public meeting is necessary in order to transact any business," 53 P.S. § 65603,[4] Romanick contends that the charges are ineffective because Supervisor Simchak prepared them without the concurrence of

---

4. Section 603 of the Township Code provides: The [Board] shall meet for the transaction of business at least once each month at a time and place determined by the [Board]. A quorum is two members of a three-member [Board] or three members of a five-

member [Board]. **An affirmative vote of a majority of the entire [Board] at a public meeting is necessary in order to transact any business. . . .**
53 P.S. § 65603 (emphasis added).

the other Supervisors. That argument is wrong for several reasons.

First, the vote of the Supervisors to remove Romanick had already occurred when the Statement of Charges was prepared, and the Statement of Charges was prepared as a result of a consented to court order. Second, Section 912 of the Township Code, 53 P.S. § 66912, specifically states that the removal of police officers shall be done in accordance with the Tenure Act and Section 2 of that Act, 53 P.S. § 812, does not require that the written notice be approved by the Supervisors. Accordingly, an affirmative vote of the Supervisors at a public meeting was not required to send the written notice of the Statement of Charges.

### D.

■ Finally, Romanick contends that Supervisor Simchak improperly issued the Statement of Charges, testified at the hearing and then participated in the final decision in violation of his due process rights. He alleges that because Simchak issued the charges and admitted that he was of the opinion that Romanick should not be police chief regardless of what evidence was presented, he should have been precluded from the final decision-making process. Essentially, what he is arguing is that *Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992) is applicable here. In that case, our Supreme Court held that "where the very entity or individuals involved in the decision to prosecute are 'significantly involved' in the adjudicatory phase of the proceedings, a violation of due process occurs." *Id.* at 546–47, 605 A.2d at 1210 (citing *Department of Insurance v. American Bankers Insurance*, 478 Pa. 532, 546, 387 A.2d 449, 456 (1978) (Nix, J. concurring)).

However, we held in *Harmon v. Mifflin County School District*, 651 A.2d 681, 685–86 (Pa.Cmwlth.1994), that the decree of separation under *Lyness* does not strictly apply to an employment situation, stating:

Moreover, we do not believe *Lyness* is applicable to this case because Section 514 of the Public School Code[5] requires that the school board, as the employer, dismiss employees and then is required to hear the challenge to the dismissal. While *Lyness* required that there be a "wall of separation" between those [proferring] the charges and those adjudicating the charges in an agency, that does not mean that complete separation has to be observed in every case for due process requirements to be met. The process that is due a person does not always require a trial-type hearing or the complete separation of functions that take place in a judicial proceeding. *See* Davis & Pierce, Administrative Law Treatise, Third Edition, § 9.5 (1994); Friendly, *Some Kind of Hearing*, 123 U. Pa. L.Rev. 1267 (1975). The type of due process hearing that is required is dependent upon the forum, the relationship of the parties, the interests at stake and should be consistent with the goal of reducing the risk of arbitrary government action.... *See* Davis & Pierce, supra § 9.8. The considerations that led our Supreme [C]ourt to require a "wall of separation" within the State Board of Medicine are not present here.

The State Board of Medicine, the forum involved in *Lyness,* is one of many independent agencies created by the General Assembly to regulate occupations for the protection of the general public. *See* Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 360. Agencies like the State Board of Medicine that both

**5.** Act of March 10, 1949, P.L. 30, *as amended,*   24 P.S. § 5–514.

initiate and hear complaints are the type of agency to which the *Lyness* principles apply. These agencies generally have the power to set criteria for licensure and to regulate those practicing in the area and are required to impose discipline or revoke licenses for those who violate the regulations. *See, e.g.,* Sections 8 and 9 of the Medical Practice Act of 1985, Act of Dec. 20, 1985, P.L. 457, 63 P.S. §§ 422.8, 422.9. When licensing is done by these independent agencies, it is impersonal—it doesn't depend on who you are, if you meet the requirements, you receive a license; or, if you violate the regulations, you are subject to penalty, including forfeiture or suspension of your license. Because hearings before these boards may deprive those that appear before it of their ability to practice their profession anywhere and because those that appear before it do so on an "ad hoc" basis, i.e., for that case only, and do not have an ongoing relationship with the board, the proceedings have been held to be one in which a party can expect that the person or persons deciding the case have not taken part in the action to prosecute him or her. However, as our Supreme Court has recognized, a person being disciplined by his employer has no such right.

Unlike those engaged in a profession requiring a license, a public employee absent legislation or contract is an employee at will, with no right to continue in employment, and has no due process rights to a hearing before being discharged. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 [ (1985) ]. In Section 514 of the Public School Code, the General Assembly gave school employees rights not protected by either the state or federal constitution by restricting the school board's unfettered right to terminate without showing just cause and by giving the employee a "protected right" to a hearing on request on whether there is just cause. If just cause exists, then it is within the school board's discretion, like all employers, to terminate an employee if it is in its best interest to do so. Additionally, in light of the continuum of what process is due, the school board's hearing allows them to determine if the termination is correct in light of the testimony and evidence presented by the employee at the hearing (and that decision is ultimately subject to judicial review), thereby satisfactorily ensuring against the risk of arbitrary action. Moreover, unlike a licensing board, when an employee is terminated, it does not prevent him from working, only from working for that employer. Even though Section 514 requires a school board to terminate an employee and hear the challenge to that termination, *Lyness* simply doesn't apply because the "interests" involved in the employment relationships are totally different than an independent agency actions regulating individuals. (Footnotes omitted).

In this case, just as in *Harmon,* there was an employment relationship at issue and only the Supervisors can terminate an employee. ˙*See* Section 1505 of the Township Code, 53 P.S. § 66505. However, it is troubling that Supervisor Simchak voted on the removal even though he and his wife testified at the hearing, which would normally disqualify him from voting on the removal. However, the nature of the offense here, which involved the central charge of Romanick's admitted disdain for the Supervisors in general, requiring at least one of the Supervisors to testify, might be cause to invoke the "rule of necessity" because all three Supervisors witnessed Romanick's repeated miscon-

duct. *Stroudsburg Area School District v. Kelly,* 701 A.2d 1000, 1003 (Pa.Cmwlth. 1997) ("Rule of necessity" is common law principle that when all members of tribunal or so many that there is not a quorum are subject to recusal, tribunal must consider case despite personal interest or bias of its members, because otherwise agency could not carry out its duties and litigants would be denied decision in matter).

■ Even if the rule of necessity did not apply, the Township took steps to insure that Romanick received all the process that he was due. The Township retained an independent hearing officer to determine issues of credibility and render findings of fact and conclusions of law to avoid the appearance of impropriety because the Supervisors were witnesses to Romanick's conduct, and the Township retained an "outside" attorney to present the evidence against Romanick. Moreover, Romanick only challenges Supervisor Simchak's vote and, even if excluded, the remaining Supervisors voted in favor of his suspension. Accordingly, Romanick was not deprived of his right to due process.

## II.

### A.

■ Romanick next argues that he did not engage in activity prohibited by the Tenure Act. Specifically, he alleges there is not substantial evidence to support the charges of "neglect of duty, incompetence" and "inefficiency, neglect, intemperance, disobedience of orders or conduct unbecoming an officer" or the allegations that he acted improperly and disrespectfully toward Township employees and the Supervisors. From the testimony summarized above, there was more than substantial evidence to support the finding that Romanick was guilty of the charges.

### B.

■ Finally, Romanick argues that the Township failed to establish that the proven charges were sufficient to warrant his removal. Specifically, Romanick contends that because all of the charges upon which his employment termination was based were not proven, the Hearing Officer committed an error of law in upholding Romanick's discharge. Here, the record contains a long history of disciplinary actions against Romanick, and indicates that the Supervisors tried to work with Romanick to improve his attitude to no avail. Demotion/employment termination rather than suspension is justified in this case not only due to the gravity of the charges which bring the police department into disregard, but also due to Romanick's repeated failure to attempt to change his manner of operating as police chief. We conclude, therefore, that the facts in this matter, which are fully supported by the record evidence, do not justify interfering in the Supervisors' exercise of its discretion by modifying the sanction imposed.

For all of the above reasons, the trial court's order is affirmed.

### ORDER

AND NOW, this *4th* day of *April,* 2013, the Schuylkill County Court of Common Pleas' August 9, 2012 order is affirmed.