Bernard J. CURRAN, Petitioner,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF STATE, BOARD OF PSYCHOLOGY, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 2000.
Decided Jan. 31, 2001.

Marianne J. Gilmartin, Lancaster, for petitioner.

Judith Pachter Schulder, Harrisburg, for respondent.

Before COLINS, Judge, PELLEGRINI, Judge and NARICK, Senior Judge.

COLINS, Judge.

Bernard Curran (Curran) petitions for review of the adjudication and order entered March 28, 2000 by the Commonwealth of Pennsylvania, Department of State, Bureau of Professional and Occupational Affairs (Bureau) after a hearing before the State Board of Psychology (Board). Said order revoked Curran's license to practice psychology, ordered him to pay a civil penalty of $250.00, and directed that prior to applying for reinstatement, Curran submit evidence to the Board that he paid the penalty and that he completed a twenty-five hour ethics tutorial from a Board-approved licensee.

The following factual background gave rise to the present appeal. Petitioner Curran, a licensed psychologist in the Commonwealth of Pennsylvania, is in private practice in Dalton, Pennsylvania. Although Curran's wife works as a receptionist/bookkeeper in his office, her hours are not regular, and she routinely does not work evenings.

In the summer of 1994, Curran was appointed by the Court of Common Pleas of Susquehanna County to conduct psychological evaluations on each member of the B family, which consisted of a divorced mother, M.B., and father, G.B., and their sons, T.B. and A.B. Curran saw the B family on numerous dates from June 20, 1994 through August 18, 1994, at times meeting solely with the sons or solely with the mother, and at other times meeting with the sons and mother together, or the sons and father together. Neither mother nor father was present when, later alleged, Curran made threatening statements to the sons. After Curran issued his report on the B family, the mother and sons were referred to counseling and the father obtained visitation rights.

Another client seen by Curran, C.H., was referred to him by her personal injury attorney for a pain management consultation. On February 9, 1995, Curran saw C.H. for approximately forty-five minutes, which included an initial consultation in which Curran asked C.H. about the facts surrounding her accident, the scope of her injuries, and the type of work she performed prior to the accident. Additionally, Curran administered to C.H. a pain evaluation, which consisted of the Beck Inventory, the Minnesota Multiphasic Personality Inventory (MMPI), and the Multidimensional Pain Inventory. According to the

Board's findings of fact, the MMPI contains questions with both sexually related and non-sexually related matters, and that during C.H.'s initial consultation, Curran told C.H. she "had a nice voice for phone sex," (N.T. pp. 1–70, 1–80) and placed his hands on C.H.'s shoulders while asking her sexually related questions. Curran advised C.H. that it would take more than one day to complete the testing and scheduled C.H. for another appointment. C.H. never kept the appointment.

A third client, L.B., is an adult female who consulted Curran to undergo the latter's smoking cessation program, consisting of an initial consultation, hypnosis, and a support tape. L.B. expressed concerns about gaining weight once she stopped smoking and she underwent hypnosis with Curran for weight loss as well. The Board found that Curran thereafter invited L.B. to meet him in his office where they engaged in a sexual relationship and that L.B. testified that Curran asked her to accompany him on a business trip to San Diego. It is alleged that L.B.'s sexual relationship with Curran ended in November 1996.

On May 28, 1998, the Commonwealth filed an order to show cause against Curran, charging him with having violated the Professional Psychologists Practice Act (Practice Act).[1] The order to show cause contained nineteen counts of alleged violations involving the following complainants whom Curran had treated: the B family, C.H., and L.B. Collectively considered, the counts charged Curran with conduct that was unethical, unprofessional, and exploitive of the professional relationship; harassment, sexual or otherwise; gross incompetence, negligence and/or misconduct in the practice of psychology; and failure to keep adequate records as to L.B.

On July 24, 1998, Curran filed a timely answer specifically denying the allegations of the order to show cause. On August 25, 1998, the Board issued an order scheduling a formal hearing for September 14, 1998. After several continuance requests, and a motion filed by Curran to seal the record, which the Board denied, hearings were held on January 11, January 12, and February 22, 1999. After the hearings, the Board concluded that there was insufficient evidence against Curran on most of the counts brought against him except the following: (1) the Board sustained Count 12 after finding that by placing his hands on C.H. and asking sexually related questions while C.H. was completing a pain evaluation, Curran violated Section 8(a)(11) of the Practice Act, 63 P.S. § 1208(a)(11), thereby subjecting him to disciplinary action; (2) the Board sustained Counts 14, 15 and 16 after finding that Curran's sexual relationship with L.B. violated Section 8(a)(9) of the Practice Act, 63 P.S. § 1208(a)(9), Section 8(a)(11) of the Practice Act, and Principles 6(b) and 7(e) of the Board's regulations, 49 Pa.Code § 41.61; and (3) the Board sustained Count 19 after finding that Curran failed to keep adequate and complete records of his treatment of L.B., thereby violating Section 8(a)(9) of the Practice Act.

By order dated March 28, 2000, the Board revoked Curran's license to practice psychology, ordered that he pay a civil penalty of $250.00, and directed that prior to applying for reinstatement, Curran provide the Board with evidence that he paid the monetary penalty and that he completed a twenty-five-hour ethics tutorial from a licensee approved by the Board.

■ Curran filed the present appeal from the Board's order.[2] On appeal, Curran argues that improper commingling of adjudicative and prosecutorial functions

1. Act of March 23, 1972, P.L. 136, *as amended*, 63 P.S. §§ 1201–1221.

2. In reviewing an order from the Board, this Court may only determine whether necessary findings of fact are supported by substantial evidence or whether the Board committed an error of law or an abuse of discretion. *Giddings v. State Board of Psychology,* 669 A.2d 431 (Pa.Cmwlth.1995).

tainted his hearing in that Jackie Lutz served as counsel to the Board and thereafter became senior prosecutor in charge of the case against him. It is Curran's position that Lutz's dual roles created the appearance of, if not actual, impropriety. Curran also contends that the Board erred in refusing to bifurcate the claims of multiple complainants and address them in separate hearings. As a result, Curran avers that the Board improperly allowed the evidence it received regarding one complainant, L.B., to taint or influence the sanctions it imposed for purported violations involving other complainants.

■ In first determining whether there was improper commingling of adjudicative and prosecutorial functions in this matter, we look to *Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992), perhaps the quintessential case addressing this issue, wherein our Supreme Court set forth the following guidelines:

> In determining what process is due Pennsylvania citizens, this Court has established a clear path when it comes to commingling prosecutorial and adjudicatory functions. There is a strong notion under Pennsylvania law that even an *appearance* of bias and partiality must be viewed with deep skepticism, in a system which guarantees due process to each citizen....
>
> > The decision to institute a prosecution is such a fundamental prosecutorial function that it alone justifies concluding a dual capacity where the individual also is charged with the responsibility of making the ultimate determination of guilt or innocence.
>
> > . . . .
>
> > Whether it is one person or eight who merge the prosecutorial and adjudicatory roles, the danger is equally serious.
>
> Thus, a mere possibility of bias under Pennsylvania law is sufficient to raise the red flag of protection offered by the

procedural guaranty of due process. Not only does our decision in Dussia make this point explicit, but a steady string of cases over the past three decades has firmly established such a principle as a matter of Pennsylvania law. In *Gardner v. Repasky*, 434 Pa. 126, 252 A.2d 704 (1969), this Court invalidated a procedure whereby the same individual was a member of the Fire Board which brought the initial complaint against a police officer, and the Civil Service Commission which heard the officer's appeal, thereafter suspending him. In *Gardner*, Mr. Justice Cohen stressed that the mere *appearance* of bias must be avoided and concluded: "A man cannot sit as judge when he is a member of a board which has brought the accusations...."

In *Commonwealth, Department of Insurance v. American Bankers Insurance*, 478 Pa. 532, 387 A.2d 449 (1978), [the Supreme Court stated:] "Such a commingling of prosecutorial and adjudicatory functions in one individual offends fundamental notions of due process and is constitutionally impermissible." *Id.* at 534, 387 A.2d at 450.

529 Pa. at 542, 544–45, 605 A.2d at 1207, 1208–09 (citations omitted). In the present matter, Curran takes issue with the fact that Jackie Lutz was serving as counsel to the Board when his case came before the latter, and that thereafter Lutz was transferred to the position of supervising prosecutor for the charges brought against Curran. The Board counters by averring that at the time Lutz was Board counsel, the only matters involving Curran then before the Board were: (1) whether the Board should conduct a formal hearing or delegate the case to a hearing examiner; and (2) whether to grant Curran's motion for a continuance. As to both of these questions, the Board maintains that Lutz performed solely administrative, non-adjudicatory functions and that she did not provide any legal advice to the Board concerning Curran.

Upon review, however, we find no evidence of record submitted by the Board to support its mere assertions that Lutz proffered no legal advice or opinions that might have influenced what purports to be an independent Board decision. Indeed, the record is unclear as to what specific safeguards, if any, were implemented by the Board to prevent the commingling of what appears to be Lutz's dual roles and to preclude even a hint of undue influence. We therefore reject the Board's attempt to distinguish the present situation from other more blatant instances of the commingling of adjudicative and prosecutorial functions. Although our Supreme Court has acknowledged that " 'a mere tangential involvement' of an adjudicator in the decision to initiate proceeding is not enough to raise the red flag of procedural due process[,]" the Court has consistently reaffirmed that where a single administrative body has multiple functions, our Constitution mandates that "walls of division" exist to preclude "the threat or appearance of bias." *Lyness*, 529 Pa. at 546, 605 A.2d at 1209 (quoting *Department of Insurance v. American Bankers Insurance* ), 478 Pa. at 545, 387 A.2d at 456.

In the present matter, the Board failed to establish that any such walls of division existed to ensure separation of its adjudicative and prosecutorial operations. This Court has consistently reaffirmed that the "[c]ommingling of the adjudicatory and prosecutory functions violates due process in that it may tempt a person who must remain impartial to tilt the balance in favor of one side." *Shah v. State Board of Medicine*, 139 Pa.Cmwlth. 94, 589 A.2d 783, 793, *petition for allowance of appeal denied*, 528 Pa. 646, 600 A.2d 197 (1991).

■ With respect to Curran's assertions that the Board erred in failing to bifurcate his hearing to separately address each complainant, we note that our appellate courts have consistently reaffirmed that the "decision whether to bifurcate issues at trial may not be disturbed by this Court on appeal absent an abuse of discretion." *Santarlas v. Leaseway Motorcar Transport Co.*, 456 Pa.Super. 34, 689 A.2d 311, 314 (1997). We find no abuse of discretion on the Board's part in this regard. The charges against Curran, although involving several patients, all uniformly reflect on the level of professionalism or lack thereof that he evinced in his practice. Considering the foregoing, coupled with the interests of judicial economy, we do not find the Board's rejection of Curran's motion to bifurcate unreasonable.

The formal hearing in Curran's case began on January 11, 1999 and extended over three days, with deliberations by the Board sitting in executive session on July 27, 1999, January 24, 2000, and February 28, 2000. The Board's final Adjudication and Order was issued on March 28, 2000. Since the aforementioned dates, several new Board positions (two professional members and one public member) have become available.[3] As the Court held in *Batoff v. Commonwealth, Bureau of Professional and Occupational Affairs*, 158 Pa.Cmwlth. 267, 631 A.2d 781, 785 (1993), *aff'd per curiam*, 547 Pa. 518, 692 A.2d 139 (1994), although Section 1203.1(a) and (c) of the Practice Act requires a five-member quorum for the Board to conduct business, the Board is permitted to adjudicate a case with three "untainted" Board members.

■ Accordingly, we vacate the Board's order and remand the matter to the Board to conduct a new hearing before a three-member panel consisting of the new professional Board members, once they are appointed and confirmed, and the new public Board member, Catherine Maxaner,

---

**3.** Pursuant to 63 P.S. § 1203.1, Board members are appointed by the Governor and are voted upon by the Senate. On November 15, 2000, Catherine Maxaner was officially appointed to the Board as a new public member. Although Ms. Maxaner had served previously on the Board, she did not participate in hearing Curran's case, and therefore abstained from voting on the matter on February 28, 2000. (N.T., Minutes from State Board of Psychology Meeting, 2/28/00 and 2/29/00, pp. 67–68.)

all of whom did not participate in the previous hearings and deliberations regarding Curran, and therefore are untainted by past proceedings. If this cannot be accomplished in a timely fashion, we direct that a hearing be conducted by an independent hearing examiner who shall make findings of fact and conclusions of law pursuant to Section 3 of Act 48 of 1993, 63 P.S. § 2203.[4] Further, we caution the Board to exercise the utmost vigilance against the commingling of adjudicative and prosecutorial functions, and therefore direct that the new hearing in Curran's case be conducted without the participation of attorney Jackie Lutz.

4. Act of July 2, 1993, P.L. 345, relating to the appointment of hearing examiners to conduct hearings in disciplinary matters before a licensing board, provides in pertinent part as follows:

    (a) Appointment.—Notwithstanding any other provision of law, the Commissioner of the Bureau of Professional and Occupational Affairs, after consultation with the licensing boards and commissions, shall appoint such hearing examiners as may be necessary to conduct hearings in disciplinary matters before a licensing board or commission. Each licensing board and commission shall have the power to decide if a specific disciplinary matter or type of disciplinary matter is to be heard by the licensing board or commission itself or by a hearing examiner appointed pursuant to this subsection.

    . . . .

    (c) Powers.—Such hearing examiners shall have the power to conduct hearings in accordance with applicable statutes, rules and regulations, . . . and to issue decisions.

## ORDER

AND NOW, this 31st day of January 2001, the order of the State Board of Psychology in the above-captioned matter is vacated, and the matter is remanded to the Board for proceedings consistent with this opinion.

Jurisdiction relinquished.