FINANCIAL SOLUTIONS AND ASSOCIATES, and Thomas Grimes, Appellants,

v.

Robin CARNAHAN, Secretary of State and Mathew Kitzi, Commissioner of Securities, Respondents.

No. WD 71332.

Missouri Court of Appeals, Western District.

July 20, 2010.

Steven W. Koslovsky, for Appellants.

Jeremiah Morgan, for Respondent.

Before Division Three: JAMES M. SMART, JR., Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

JOSEPH M. ELLIS, Judge.

Appellants, Financial Solutions & Associates, Inc., (FSI) a St. Louis-based financial planning firm, and Michael Grimes (Grimes), the principle of FSI, (Appellants) appeal from an Order and Judgment of the Circuit Court of Cole County, which upheld the Findings of Fact, Conclusions of Law and Final Order (Final Order) issued by the Missouri Commissioner of Securities (Commissioner) finding that the Appellants engaged in an act, practice, or course of business that operated as fraud or deceit upon persons under § 409.5–502(a).[1]  The Appellants

**1.** The Commissioner's Final Order also found that the Appellants unlawfully transacted business as an investment adviser without the proper registration, unlawfully transacted

also appeal from the Commissioner's denial of their motion to disqualify. For the following reasons, we affirm.[2]

On January 25, 2007, the Securities Division of the Office of Secretary of State (Division) filed a petition for an Order to Cease and Desist with the Commissioner against the Appellants alleging seven violations of law under the Missouri Securities Act of 2003. The Commissioner issued a Cease and Desist Order and sent notice to Grimes, providing him with an opportunity for a hearing. The Appellants requested a hearing and filed a motion to disqualify the Commissioner based on bias.[3] The Commissioner denied the Appellants' motion to disqualify because they cited to no authority and because Missouri statutes required the Commissioner to hold a hearing in the Appellants' case.

A hearing regarding the Cease and Desist Order was subsequently held and, after the parties submitted Memorandum of Law, the Commissioner issued his Final Order concluding that Grimes and FSI, among other things and as pertinent to the

appeal, engaged in an act, practice, or course of business that operated as fraud or deceit upon persons under § 409.5–502(a). The Commissioner fined the Appellants for violations of the Missouri Securities Act, and the Appellants timely sought judicial review with the Circuit Court of Cole County. The circuit court, after reviewing the record, briefs, and arguments of the parties, affirmed the Commissioner's Final Order.

Our standard of review has been summarized as follows:

> This court reviews the decision of the administrative agency, not that of the circuit court. On appeal from an agency decision in a contested case, we consider only whether the agency's findings are supported by competent and substantial evidence on the record as a whole. We may not substitute our judgment on the evidence for that of the agency, and we must defer to the agency's determinations on the weight of the evidence and the credibility of witnesses. If the deci-

---

business as an investment adviser representative without the proper registration, and unlawfully employed an unregistered investment adviser representative. The Appellants do not appeal from these findings or conclusions.

**2.** After oral arguments and submission of this case, the Appellants filed a suggestion of bankruptcy, indicating that Grimes filed for bankruptcy in Case No. 10–45867 in U.S. Bankruptcy Court, Eastern District of Missouri on May 26, 2010. Generally, under 11 U.S.C. § 362(a)(1), Grimes's filing operates as a stay to the continuation of a judicial proceeding against Grimes. One exception to this automatic stay provision, however, states that the filing of a bankruptcy petition does not operate as a stay of the continuation of an action or proceeding by a governmental unit to enforce such governmental unit's or organization's police or regulatory power. 11 U.S.C. § 362(b)(4). The Federal Court of Appeals for the Eighth Circuit has interpreted 11 U.C.S. § 362(b)(4) to permit "the government

to seek the entry of a money judgment as its sole remedy for the violation of a fraud or other police or regulatory law." *United States v. Commonwealth Companies, Inc.,* 913 F.2d 518, 522 (8th Cir.1990). "[W]here a governmental unit is suing a debtor to prevent or stop violation of *fraud,* environmental protection, consumer protection, safety, or similar police or regulatory laws, *or attempting to fix damages for violation of such a law,* the action or proceeding is not stayed under the automatic stay." *Id.* (quoting from the Senate and House Committee Reports on the Bankruptcy Reform Act of 1978). Accordingly, the automatic stay provisions of the bankruptcy code are inapplicable to this proceeding.

**3.** The Appellants alleged the Commissioner was biased because the Assistant Commissioner, who works directly under the supervision of the Commissioner, filed the petition and conducted the investigation against the Appellants.

sion of the agency is supported by substantial and competent evidence on the whole record, it must be affirmed. On the other hand, we must reverse the agency's findings if it is determined the decision is not supported by competent and substantial evidence on the whole record, or if the decision constitutes an abuse of discretion, or is unauthorized by law, or is arbitrary and capricious. *Moses v. Carnahan*, 186 S.W.3d 889, 899 (Mo.App. W.D.2006) (internal quotation and brackets omitted).

■■■ The Appellants first contend that the Commissioner erred in failing to disqualify himself as requested by their motion. "The procedural due process requirement of fair trials by fair tribunals applies to an administrative agency acting in an adjudicative capacity." *State ex rel. AG Processing Inc. v. Thompson*, 100 S.W.3d 915, 919 (Mo.App. W.D.2003). "Officials occupying quasi-judicial positions are held to the same high standard as apply to judicial officers in that they must be free of any interest in the matter to be considered by them." *Id.* at 919–20. "A presumption exists that administrative decision-makers act honestly and impartially, and a party challenging the partiality of the decision-maker has the burden to overcome that presumption." *Id.* at 920. "A judge or administrative decision-maker is without jurisdiction ... if the judge or decision-maker failed to disqualify himself on proper application." *Id.* "[A]ny administrative decision[-]maker who has made an unalterable prejudgment of operative adjudicative facts is considered biased." *Fitzgerald v. City of Maryland Heights*, 796 S.W.2d 52, 59 (Mo.App. E.D.1990).

The Appellants contend that the Commissioner was biased and should have disqualified himself because he and the Secretary of State made public pronouncements that indicated he prejudged the case and he oversaw the Assistant Commissioner, who investigated and prosecuted the case. In their motion for disqualification and petition for judicial review, however, the Appellants did not mention any public pronouncements as a basis for disqualification. Rather, the Appellants only alleged that the Commissioner could not be fair and impartial because the Commissioner was in charge of the Assistant Commissioner and the enforcement section of the division.[4] Nonetheless, we find that all the bases raised by the Appellants for disqualification fail.

■ The Appellants contend that the Commissioner's Cease and Desist Order, which found the Appellants guilty of various violations of the Missouri Securities Act, and a press release issued by the Secretary of State describing the findings of the Cease and Desist Order, constituted evidence of bias and prejudgment on the part of the Commissioner. The Appellants cite two cases for support for their contention. First, they cite *Texaco, Inc. v. FTC*, 336 F.2d 754 (D.C.Cir.1964), *vacated on other grounds by FTC v. Texaco, Inc.*, 381 U.S. 739, 85 S.Ct. 1798, 14 L.Ed.2d 714 (1965).

In *Texaco*, the Federal Trade Commission filed a complaint that Texaco coerced its dealers, through economic pressure, to distribute Goodrich tires, batteries, and accessories, thereby unfairly and unlawfully preventing Goodrich's competitors from selling tires, batteries, and accessories to

---

4. On a petition for judicial review, § 536.140 authorizes the circuit court to hear the case "upon the petition and record filed." § 536.140. "Appellate review of the Commission's decision is also limited to preserved errors only as defined in the petition for review before the circuit court." *Chipperfield v. Mo. Air Conservation Comm'n*, 229 S.W.3d 226, 234 (Mo.App. S.D.2007).

Texaco's outlets. *Id.* at 756. As part of the procedural history of the case, Texaco filed a motion to have the Chairman of the Commission withdraw from participating in the proceeding or to have the Commission determine him to be disqualified. *Id.* at 759. The motion centered on a speech made by the Chairman before the National Congress of Petroleum Retailers, while the case was pending.[5] *Id.* The Chairman refused to withdraw, the Commission declined to find that he was disqualified, and he participated in the order. *Id.* On appeal, the United States Court of Appeals determined that it was a denial of due process for the Chairman to participate in the hearing and order. *Id.* at 760.

The Appellant's second case, *In re 1616 Second Avenue Restaurant v. New York State Liquor Authority*, 75 N.Y.2d 158, 551 N.Y.S.2d 461, 550 N.E.2d 910 (N.Y.1990), has facts similar to *Texaco*. The New York Appeals Court had to determine whether public statements made by the Chairman of the State Liquor Authority, in which the Chairman discussed the charges pending in a case against a licensee, should disqualify the Chairman from participating in the administrative review of the case. *Id.* at 911. The court held that the Chairman was disqualified because he made statements which, viewed in their entirety,

evidenced that the Chairman believed the licensee violated the law. *Id.* at 913.

■■■ The Appellants compare the facts in *Texaco* and *1616 Second Avenue* to the Commissioner issuing a Cease and Desist Order and the Secretary of State's public comments regarding the Cease and Desist Order. First, because of the Appellants' failure to provide us with a complete record on appeal, particularly the statements made by the Secretary of State, we are unable to give meaningful review to the Appellants' claim of error. *In re Estate of Abbott*, 944 S.W.2d 279, 284 (Mo. App. S.D.1997) ("On appeal, a trial court judgment is presumed valid, and the burden is on appellant to show the incorrectness of the judgment. It is essential that this court have *all* the evidence necessary to decide the questions presented." (internal quotation and citations omitted)). Second, the Missouri Securities Act allows the Commissioner to publish any record concerning an action or violation of the Act "if the commissioner determines it is necessary or appropriate in the public interest and for the protection of investors." § 409.6–602(a)(3).[6] Finally, the Commissioner was performing the duties prescribed by Missouri statute by entering a Cease and Desist Order under § 409.6–604(a)(1) and the fact that the Commis-

---

**5.** As part of his speech, the Chairman made the following statements:

"Your problems are many, and many of them are the problems of the Federal Trade Commission, too; for the Commission is concerned with promoting fair competition. More particularly, many of your problems are ours because they arise from practices prohibited by two of the most important statutes administrated by the Commission—discriminatory pricing ... and methods of competition...."

"We at the Commission are well aware of the practices which plague you and we have challenged their legality in many important cases."

"You know the practices—price fixing, price discrimination, and overriding commissions on [tires, batteries, and accessories]."

"You know the companies—Atlantic, Texas, Pure, Shell, Sun, Standard of Indiana, American, Goodyear, Goodrich, and Firestone."

"Some of these cases are still pending before the Commission; some have been decided by the Commission and are in the courts on appeal. You may be sure that the Commission will continue and, to the extent that increased funds and efficiency permit, will increase its efforts to promote fair competition in your industry." *Id.*

**6.** All statutory citations are to RSMo Cum. Supp.2003, unless otherwise indicated.

sioner issued a Cease and Desist Order that was unfavorable to the Appellants does not show bias. "The mere fact that rulings are made against a party does not show bias or prejudice on the part of the judge." *Robin Farms, Inc. v. Bartholome*, 989 S.W.2d 238, 247 (Mo.App. W.D.1999) (internal quotation omitted).

No decision of this Court would require us to hold that it would be a violation of procedural due process for a judge to sit in a case after he had expressed an opinion as to whether certain types of conduct were prohibited by law. In fact, judges frequently try the same case more than once and decide identical issues each time....

*Withrow v. Larkin*, 421 U.S. 35, 48–49, 95 S.Ct. 1456, 1465, 43 L.Ed.2d 712 (1975) (internal quotations omitted). "This is so because any alleged bias or prejudice on the part of the judge, to be disqualifying, must stem from an extrajudicial source." *Robin Farms*, 989 S.W.2d at 247. The Commissioners actions, therefore, were not similar to the statements made by the Chairmen in *Texaco* and *1616 Second Avenue*, and we cannot hold that the Commissioner was biased for issuing the initial Cease and Desist Order.

■ The Appellants also contend that the Commissioner was biased because the Commissioner was in charge of the Assistant Commissioner and the enforcement section of the Division, which conducted the investigation and prosecuted the action against the Appellants.

Under the Missouri Securities Act, the Commissioner has investigative and adjudicative duties. The Commissioner may conduct investigations when necessary to determine if a person has violated any provision of the Missouri Securities Act. § 409.6–602(a)(1). Likewise, the commissioner may issue an order to cease and desist when a person engages in a practice or course of business that violates the Missouri Securities Act. § 409.6–604(a)(1). Finally, the Commissioner and the Administrative Hearing Commission are authorized to hear cases brought under the Missouri Securities Act. *Mo Code Regs. Ann. Tit.* 15 § 30–55.010 (2003), For a Cease and Desist Order, the hearing is held before the Commissioner. *Mo Code Regs. Ann. Tit.* 15 § 30–55.010(1)(E) (2003). The Appellants essentially contend that the Commissioner demonstrated bias by performing the duties required of him by statute.

The Appellants cite *Curran v. Commonwealth of PA., Board of Psychology*, 766 A.2d 907 (Pa.Commw.Ct.2001), as support for their contention that the Commissioner's dual roles created bias and partiality in their case. In *Curran*, a disciplinary case, a psychologist who had his license with the State Board of Psychology revoked filed a petition for review and contended that "improper commingling of adjudicative and prosecutorial functions tainted his hearing" because an attorney who served as counsel to the Board served as the senior prosecutor in the disciplinary action against him. *Id.* at 909–10. The Commonwealth Court of Pennsylvania determined that Curran's right to a fair hearing included a hearing free from the prosecutor's conflicts. *Id.* at 910–11.

Unlike in *Curran*, where evidence showed the prosecutor acted as counsel to the board, there is no evidence here that the Commissioner participated in any of the investigations relating to Appellants. In fact, the Assistant Commissioner appeared on behalf of the Commission and prosecuted the case while the Commissioner adjudicated the case. The Appellants do not contend, therefore, that the Commissioner acted in dual roles, rather the Appellants contest having an administrative body that contains investigatory

departments as well as adjudicative departments, which are functions inherent in virtually all administrative bodies.

In a case more on point, the United States Supreme Court, addressing whether the Wisconsin Medical Examining Board could temporarily suspend a doctor's license at its contested hearing on charges stemming from its own investigation without violating procedural due process, noted that it is a difficult burden to contend that "the combination of investigative and adjudicative functions *necessarily* creates an unconstitutional risk of bias in administrative adjudication." *Withrow,* 421 U.S. at 46–47, 95 S.Ct. at 1464 (emphasis added). Addressing a previous decision, the Court noted that the "fact that the Commission had entertained such views as the result of its prior *ex parte* investigations did not necessarily mean the minds of its members were irrevocably closed on the subject." *Id.* at 48, 95 S.Ct. at 1465 (internal quotation omitted).

■ The Appellants have failed to show that the Commissioner was biased. "Bias and prejudice must flow from an extra-judicial source to be disqualifying." *D.F. v. C.D.,* 108 S.W.3d 669, 678 (Mo.App. W.D.2002). "It requires a substantial showing of bias to disqualify the officer holding the hearing in an administrative proceeding." *Welty v. State Bd. of Chiropractic Exam'rs,* 759 S.W.2d 295, 299 (Mo. App. W.D.1988). In this case, the Commissioner was acting pursuant to, and in compliance with, statutory requirements. We presume the Commissioner acted with honesty and integrity. The Appellants did not present, nor have they directed us to, any evidence from extra-judicial sources demonstrating or even suggesting any bias or prejudgment on the part of the Commissioner. Accordingly, we find the Commissioner acted properly when he denied the Appellant's motion for disqualification. Point denied.

■ For the Appellants' second point, they contend that the Commissioner erred in finding the statements on FSI's website were fraudulent and deceitful because that finding was not supported by substantial and competent evidence. Section 409.5–502(a) states:

It is unlawful for a person that advises others for compensation, either directly or indirectly or through publications or writings, as to the value of securities or the advisability of investing in, purchasing, or selling securities or that, for compensation and as part of a regular business, issues or promulgates analyses or reports relating to securities: (1) To employ a device, scheme, or artifice to defraud another person; or (2) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

The Commissioner found that Grimes was responsible for the content of the FSI's website which stated that "Financial Solutions & Associates, Inc. is a fee-only financial planning firm ... compensated solely by fees paid by their clients and does not accept commissions or compensation from any other source." During that same time, the Commissioner found that Grimes received commissions from various insurance companies for sales of equity-indexed annuities. The Commissioner also found that Grimes received commissions of over $150,000 from Barrington Capital Management, Inc. (Barrington), with whom Grimes was formally engaged as a solicitor from January 14, 2004, through November 2006. The Commissioner concluded that "[m]aintaining a publicly available website claiming to earn no commissions, nor any compensation from sources other than clients, while in fact earning commissions, and compensation from

sources other than clients, is a course of business that would deceive another person, primarily potential clients and Missouri investors."

Grimes contends that the alleged fraudulent statements contained on the FSI website are equally consistent with honesty and good faith and they are insufficient to constitute substantial and competent evidence. Once again, the Appellants failed to raise this issue in their petition for judicial review. The Appellants asserted, in their petition, that there was no competent and substantial evidence of the following: (1) the Appellants transacted business as unregistered investment advisors with respect to June Antolik; (2) the Appellants held themselves out as investment advisors by distributing written material concerning their investment philosophy; (3) the Appellants held themselves out as investment advisors by maintaining a website describing their investment philosophy; and (4) FSI employed an unregistered investment advisor. The Appellants did not contest the Commissioner's finding and conclusion that the statements on FSI's website were fraudulent and deceitful.

Nonetheless, even if the Appellants' arguments had been properly presented and preserved for appeal, we would affirm. When we review an agency's action to determine whether it is supported by substantial and competent evidence, we look to the whole record and not just the evidence that supports the decision. *Morgan v. City of St. Louis,* 154 S.W.3d 6, 8 (Mo. App. E.D.2004). Here, there was substantial and competent evidence to support the Commissioner's finding.

At the time of the investigation, Grimes was acting as a solicitor for Barrington and had his own business, FSI. Grimes was licensed to sell life insurance, variable contracts, accident, and health insurance coverage. Barrington was a federally covered investment adviser. Between March 31, 2005, and June 30, 2006, Grimes received over $150,000 in compensation from Barrington. FSI's website, maintained by Grimes, contained a section called "Fee–Only Planner." That section clearly stated:

- "[FSI] is a fee-only planning firm committed to assisting client[s] to reach their financial goals. Fee only planners, like us, are compensated solely by fees paid by their clients and do not accept commissions or compensation from any other source."
- "The main difference between a Stockbroker and us is that they make a living by charging their clients commissions."
- "We do not earn any money from commissions, trailers, or markups."

At the hearing before the Commissioner, Janet Ellingson, an account manager for LiveOffice, who Grimes used to build and house his website, testified that when Grimes gave the information for his initial questionnaire, he stated that he was a fee-only investment advisor. Grimes testified that it was his responsibility, knowing what licenses they had, to build the site and select the proper pages that would equal the services they were licensed to offer. Grimes also admitted that he was a solicitor for Barrington at the same time he maintained his website and would receive 60% of the management fee that Barrington received when they managed the clients Grimes brought to them.

After a review of the record on appeal, particularly the evidence presented regarding the website and the commissions the Appellants received at the same time the website proclaimed they were "fee-only," we conclude the Commission's finding is supported by competent and substantial evidence.

■ Moreover, to the extent Grimes contends that the Commissioner erred in finding the statements constitute fraud or deceit under § 409.5–502(a), that argument also fails. When we review an agency's application of law to fact, our review is *de novo*. *Warner v. Wurm*, 254 S.W.3d 148, 150 (Mo.App. E.D.2008). Nonetheless, "[i]t is recognized in Missouri, as well as generally, that the primary purpose of legislation similar to that of the Missouri Uniform Securities Act is that of protecting the buyers of securities." *Garbo v. Hilleary Franchise Sys., Inc.*, 479 S.W.2d 491, 499 (Mo.App. E.D.1972) (internal quotation and asterisks omitted). To fulfill that purpose, we "embod[y] a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Id.* (internal quotation omitted). As noted *supra*, under § 409.5–502(a):

> It is unlawful for a person that advises others for compensation, either directly or indirectly or through publications or writings, as to the value of securities or the advisability of investing in, purchasing, or selling securities or that, for compensation and as part of a regular business, issues or promulgates analyses or reports relating to securities: (1) To employ a device, scheme, or artifice to defraud another person; or (2) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

The Appellants contend that fraud and deceit under the Missouri Securities Act require the making of a false or misleading statement of material fact, or the failure to disclose a material fact necessary to avoid making another statement not misleading. They contend that the statements from FSI's website do not meet this definition. Fraud and deceit are not defined in the Missouri Securities Act. However, the terms "[f]raud," "deceit," and "defraud" are not limited to "common law deceit." § 409.1–102(9).

■ When interpreting the meaning of words used in the Missouri Securities Act, we look to other states' interpretations of their securities law as well as federal interpretations. *Moses*, 186 S.W.3d at 904 ("Missouri courts have often looked to cases decided by courts from other jurisdictions to aid in comprehending the *definitional* limitations of the Act, particularly when the language of the federal and state securities statutes involved is nearly identical."); *State v. Dumke*, 901 S.W.2d 100, 102 (Mo.App. W.D.1995) ("[W]hen construing uniform acts, it must be remembered that the fundamental purpose of a uniform law is to eliminate uncertainty and provide plain and certain the controlling rules of law. It is fitting, therefore, to turn to our sister jurisdictions and examine their solutions to the problem." (Internal citation and quotation omitted)).

Similar to federal securities legislation, Missouri securities legislation makes it unlawful for persons to engage in practices or a course of business that "*operates or would operate* as fraud or deceit." § 409.5–502(a)(emphasis added); *cf.* 17 C.F.R. § 240.10b–5(c). This language "quite plainly focuses upon the *effect* of particular conduct on members of the investing public, rather than upon the culpability of the person responsible." *Aaron v. Sec. & Exch. Comm'n*, 446 U.S. 680, 697, 100 S.Ct. 1945, 1955, 64 L.Ed.2d 611 (1980). This same approach has been followed in other states, as these states have also relied on the *Aaron* decision. *See, e.g., Secretary of State v. Tretiak*, 117 Nev. 299, 22 P.3d 1134, 1141 (2001).

Moreover, when a definition is not present in the statute, "the plain and ordinary

meaning is derived from the dictionary." *Cox v. Dir. of Revenue,* 98 S.W.3d 548, 550 (Mo. banc 2003). "Fraud" is defined as "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." *Black's Law Dictionary* 731 (9th ed.2009). "Deceit" is defined as "[t]he act of intentionally giving a false impression." *Id.* at 465. It is also defined as "[a] false statement of fact made by a person knowingly or recklessly with the intent that someone else will act upon it." *Id.* The evidence presented in the record on appeal demonstrates that the FSI website's language meets these definitions.

The Commissioner did not err in determining that Grimes's statements on the FSI website constituted fraud or deceit under the Missouri Securities Act. The Commissioner's decision is in line with other state and federal decisions and meets the definitions given to these terms. We attempt to construe the Missouri Securities Act in a manner that is consistent with the Commissioner's interpretation, *Moses,* 186 S.W.3d at 899, and we do not find that the Commissioner's interpretation was unreasonable or arbitrary. Point denied.

The Commissioner's decision finding that Appellants engaged in an act, practice, or course of business that operated as fraud or deceit upon persons under § 409.5–502(a) is affirmed.

All concur.