CENTRAL UNITED LIFE
INSURANCE COMPANY,
Respondent,

v.

John M. HUFF, Appellant.

No. WD 73168.

Missouri Court of Appeals,
Western District.

Nov. 1, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 20, 2011.

Application for Transfer Denied
March 6, 2012.

James R. McAdams Tamara A. Kopp, Jefferson City, MO, for Appellant.

Sherry L. Doctorian, Matthew D. Turner, Jefferson City, MO, for Respondent.

Before THOMAS H. NEWTON, P.J., CYNTHIA L. MARTIN, and GARY D. WITT, JJ.

THOMAS H. NEWTON, Presiding Judge.

The Division of Insurance Market Regulation (Regulation Division) of the Missouri Department of Insurance, Financial Institutions and Professional Registration (Department), examined the business operations of Central United Life Insurance Company (Central United). Thereafter, the Regulation Division issued a final report of its findings and conclusions. Central United requested a modification of the report and a hearing from the Director of the Department. After a contested hearing on the modification request, the Director issued its "Findings of Fact, Conclusions of Law and Confidential Final Order Accepting Final Examination Report as Filed" (Order). Thereafter, Central United appealed the decision[1] to the circuit court. The circuit court reversed the Director's decision and remanded the case. The Director appeals. We reverse the trial court and affirm the Director.

**Factual and Procedural Background**

Central United purchased supplemental cancer insurance policies from two companies in 1996 and 1997. These policies already had existing policyholders. Central United administered these policies but did not market these policies to others; rather, it marketed its own cancer policy. According to each policy, an insured would be reimbursed for the "actual charge" for a cancer-related medical expense or non-medical expense.[2] The policies required a

---

1. The Director issued two orders, one accepting the report and the other accepting the report and finding Central United violated the insurance laws. Central United appealed the latter.

2. The policies were advertised as supplements to basic health insurance. Although the reimbursement was based on the actual charge for certain cancer-related expenses, the policyholder could use the money to pay other bills or provide other needs.

claimant to submit documentation proving loss to be entitled to a payment. Claimants normally submitted itemized statements from the healthcare provider to Central United, and Central United would issue a check to the insured for the price listed on the itemized statement. The process changed in February 2003, when policyholders with medical insurance, including Medicare, were required to also submit an explanation of benefits (EOB) from their medical insurer. Central United would then issue a check to the insured reflecting the amount the medical insurer paid to the provider rather than the greater amount of the listed price. However, similarly-situated policyholders with open claims prior to February 2003 continued to receive benefit checks reflecting the listed prices from the itemized statements.

Central United changed the claim form to reflect the new documentation requirement; the back of the form explained to claimants that they were required to submit the EOB because the "actual charge" was the amount on the EOB rather than the price listed on the itemized statement. Additionally, Central United sent its claimants a statement explaining that the amount on the EOB was the "actual charge" because it was the highest amount a healthcare provider could charge Medicare or a major medical carrier.

Claimants formally complained about this change to Central United and to the Department's Division of Consumer Affairs (Consumer Division). Central United defended its actions to the Consumer Division, denying that it had changed its internal definition of "actual charge" and claiming that it had changed its procedure to reflect the "actual charge"—the amount the provider received in payment. Repre-

sentatives from the Consumer Division wrote letters to the claimants explaining that the Department found no basis for further investigation and informing them that the Department could not rule on the correctness of the company's interpretation. Additional complaints were filed because the payments of claims were slow and the premium rate had increased.

Responding to the complaints, the Department provided notice to Central United in October 2004 that it would perform a market conduct examination of the company. In 2006, the Regulation Division reviewed Central United's business operations from January 1, 2002, through December 31, 2004, specifically the areas of sales and marketing, underwriting, claims, and complaints/grievances for its cancer and specified disease health insurance policies. A draft report of the market conduct examination was not issued until 2008 after correspondence and meetings with Central United. The Regulation Division modified the report at Central United's request. Additionally in 2008, an Alabama court accepted a class action settlement agreement between Central United and a class of insureds from around the nation, including Missouri. That decision, *Skelton v. Central United*,[3] became final in January 2009 and required Central United to pay Missouri policyholders damages for the change in claims administration.

In July 2009, after negotiation with Central United, the Division issued its Final Market Conduct Examination Report (final report). The gist of the findings was that Central United's practice requiring EOB's to prove loss of an "actual charge"—a departure from its earlier practice—created an ambiguity in its can-

**3.** *Cora V. Skelton, et al. v. Central United Life Insurance Co.,* No. CV–2008–900178, Circuit Court of Mobile County, State of Alabama.

cer policies. Based on the findings, the Regulation Division concluded that Central United had marketed ambiguous policies. The specifics of the advertisements for each of the three policies varied, but they all advertised that benefits were paid despite the claimant's other insurance. Because the new claims administration was affected by other insurance, the Regulation Division also concluded that the advertisements for the policies could mislead the consumer as to the nature and extent of the policy benefits. The policies did not contain a definition of "actual charge" until October 2003 and the language in the forms and prior administration showed an intention that the meaning of the term was the amount billed by the provider. In addition, these policies were guaranteed to be renewable; the only provision Central United could change without consent from its policyholders was the premiums. Consequently, the Regulation Division concluded that the change in claims administration was unlawful and that Central United should re-process claims based on the amount billed by the providers. Although Missouri policyholders had been awarded damages for the change from the settlement judgment, *Skelton* was not mentioned in the final report. Central United requested a modification and a hearing from the Director pursuant to 20 CSR 100–8.018(1)(F).[4]

The Director granted the hearing. After an adversarial hearing, the appointed hearing officer recommended that the Director accept the final report without modification. The Director issued an order adopting the final report as filed pursuant to 20 CSR 100–8.018(1)(F) and another order pursuant to 20 CSR 100–8.018(1)(G)(1), determining that Central United violated several insurance laws and directing the enforcement section of the Department to initiate civil proceedings against Central United, as provided in section 374.048.[5] Central United appealed the order accepting the final report to the circuit court. After hearing arguments, the circuit court reversed the Director's decision and remanded the case. The Director filed a notice of appeal. Although the Director filed the appeal, Central United is treated as the appellant.[6]

**Standard of Review**

Because this is a contested case, we review the administrative decision rather than the trial court's judgment. *Ehler v. Mo. State Highway Patrol,* 254 S.W.3d 99, 100–101 (Mo.App. W.D.2008). We determine whether the Department's decision:

(1) Is in violation of constitutional provisions; (2) Is in excess of the statutory authority or jurisdiction of the agency; (3) Is unsupported by competent and substantial evidence upon the whole rec-

---

4. 20 CSR 100–8.018(1)(F) states:
   The company shall, within thirty (30) days of receipt of the final report, accept the final report, accept the findings of the report, file written comments, or petition to modify the findings with a request for hearing. The company is not obligated to submit a response to the final report. The director may allow an additional thirty (30) days if requested by the company. Any petition to modify the findings with a hearing request shall be made in writing, and a hearing shall be held. After a hearing the

director shall issue final examination findings;

5. The civil enforcement case was still pending at the time of oral arguments before this court. Statutory references are to RSMo 2000 and the Cumulative Supplement 2010.

6. According to Rule 84.05(e), Central United had to file the appellant's brief since it was aggrieved by the agency's decision, despite having prevailed at the circuit court level.

ord; (4) Is for any other reason, unauthorized by the law; (5) Is made upon unlawful procedure or without a fair trial; (6) Is arbitrary, capricious or unreasonable; [or] (7) Involves an abuse of discretion.

§ 536.140.2; *State Bd. of Registration for the Healing Arts v. McDonagh*, 123 S.W.3d 146, 152 (Mo. banc 2003). We will affirm if, after reviewing the entire record in the light most favorable to the Department's decision, the decision is supported by competent and substantial evidence. *See Ehler*, 254 S.W.3d at 101. In our review, we provide no deference to the Department's conclusions of law. *See McDonagh*, 123 S.W.3d at 152.

## Legal Analysis

█ In its first point, Central United argues that the Director erred in the Final Administrative Order and Market Conduct Report (Order) because he interpreted the policy term, "actual charge," unlawfully and incorrectly. Specifically, Central United claims that in the final report the Director and his examiners defined and adjudicated "actual charge" by concluding that the term meant "the amount healthcare providers billed for their services." It further claims that this interpretation and adjudication of the term was beyond the enumerated powers and duties of the Director under sections 374.040 and 374.045. The Director claims that it "did not enter a finding of fact or issue a conclusion of law declaring the meaning of the term *actual charge*" in the Order, but rather accepted the final report's conclusion that the term was ambiguous and required interpretation in the insured's favor. We agree with the Director.

Subsection 374.205.3(1) provides that:

All examination reports shall be comprised of only facts appearing upon the books, records, or other documents of the company, its agents or other persons examined, or as ascertained from the testimony of its officers or agents or other persons examined concerning its affairs, and such conclusions and recommendations as the examiners find reasonably warranted from the facts.

After considering and reviewing the report along with any written submissions and rebuttals, the Director may order an investigatory hearing for the purpose of obtaining additional information. § 374.205.3(3)(c). After that hearing, the Director may adopt the report, shall issue findings and conclusions, and address any violations of the law found by the examiners in the report. § 374.205(4). The regulations implement this procedure in 20 CSR 100–8.

Here, the Director adopted the final report after an investigatory hearing. The Director found that Central United's change in its administration of the "actual charge" benefit highlighted an ambiguity in the policy. The Director has the implicit authority to declare a policy ambiguous. Section 374.005 states that the Department of Insurance "shall administer and enforce the laws assigned to the department." Section 374.040 gives the Director the power "to do and perform with justice and impartiality all such duties as are or may be imposed upon him by the laws regulating the business of insurance in this state." Section 376.777.7 in pertinent part states:

(3) The director of insurance shall approve only those policies which are in compliance with the insurance laws of this state and which contain such words, phraseology, conditions and provisions which are specific, certain and *unambiguous* and reasonably adequate to meet needed requirements for the protection of those insured. The disapproval of any policy form shall be based upon the requirements of the laws of this state or

of any regulation lawfully promulgated thereunder.

(emphasis added).

Accordingly, the Director acted within the scope of his authority in declaring the policy ambiguous based on Central United's change in claims administration—a change which the Director found reflected that Central United had unilaterally employed two different definitions of "actual charges." However, the Director did not define "actual charges." Rather, it effectively prohibited Central United from utilizing a definition that was more favorable to it, and required Central United to use one meaning over the other, i.e., the amount billed by the provider rather than the amount paid to the provider, through application of a case stating that ambiguities in an insurance policy should be construed against the insurer.

■ Thus, we need not address Central United's contention that this interpretation was incorrect, as the contention inaccurately presumes that the Director made a finding about the definition of "actual charges." We understand that Central United wants us to address the issue because the propriety of this interpretation is being considered in the pending action against Central United, and because section 374.205.2(5) provides that the Director's findings and conclusions "shall be" prima facie evidence "in any legal or regulatory action." "Prima facie evidence is not conclusive evidence. On the contrary, it is evidence which, for the time being, produces a certain result that may be repelled." *Bhd. of Stationary Eng'rs v. City of St. Louis*, 212 S.W.2d 454, 459 (Mo.App. 1948). In other words, the evidence satisfies the production burden but does not satisfy the burden of persuasion if such evidence is rebutted by other evidence. *See Dolan v. Powers*, 260 S.W.3d 376, 385 (Mo.App. W.D.2008). Consequently, the

Director's conclusion that Central United violated the law by changing its internal definition of "actual charge" as to existing policies is not binding on the court in which the enforcement action is filed if Central United presents a defense. At that point, "the truth of the matter in issue is then to be determined in light of all the pertinent facts and circumstances." *Bhd.*, 212 S.W.2d at 459. Central United's first point is denied.

■ In its second point, Central United argues that the Director failed to acknowledge and give full faith and credit to the final judgment in *Skelton*, "requiring reversal under section 536.140.2, RSMo, in that *Skelton* conclusively determined the meaning of *actual charge* between Central United and its Missouri policyholders and settled all claims between them." Specifically, Central United argues the Director imposed a definition of "*actual charge* different from that adjudicated and agreed in *Skelton* "[;] determined violations based on that definition; and concluded that claims should be reprocessed on "the basis of a hypothetical *billed amount* when all claims have been finally settled in *Skelton*."

■ Missouri and its sister states are required to give full faith and credit to each other's valid judgments. *Peoples Bank v. Frazee*, 318 S.W.3d 121, 126 (Mo. banc 2010). However, a state is not required to give full faith and credit to such judgments when "there is (1) a lack of subject matter jurisdiction, (2) a lack of personal jurisdiction, or (3) fraud in the procurement of the judgment." *Id.* at 126–27. The Director asserts that *Skelton* did not require consideration because he was not a party to *Skelton;* the *Skelton* court did not exercise jurisdiction over him or the subject of this proceeding; and he has not entered an order imposing relief inconsistent with *Skelton*. We agree with

the Director. The definition of "actual charge" agreed upon between Central United and the Missouri policyholders in a settlement, which is binding between the parties, did not bind the Director's determination of the term's meaning. Accordingly, Central United's second point is denied.

■ In its third and fourth points, Central United argues that the Director erred in issuing the Order because his conclusions were not supported by competent and substantial evidence. Specifically, Central United challenges the evidence supporting the finding that Central United changed its definition of "actual charge," and the conclusions of statutory violations.

Central United's vice president of operations, Ms. Lee Ann Blakey, stated that prior to February 2003, the claimants would submit itemized statements to substantiate their claims. She also admitted that the claimants had to ask the healthcare provider for those itemized statements from which Central United's examiner would determine the covered services. She claimed that the process later changed because Central United discovered EOB's from major medical insurance companies showed the "actual charges." She further claimed that because the policy did not define "actual charge," Central United later sent notices to the policyholders defining the term.

■ The meaning of contractual terms may be determined in part by the parties' behavior when a contract is ambiguous. *See Leggett v. Mo. State Life Ins. Co.*, 342 S.W.2d 833, 852 (Mo. banc 1961). Two types of ambiguities exist in the law: patent and latent. *Jake C. Byers, Inc. v. J.B.C. Invs.*, 834 S.W.2d 806, 816 (Mo.App. E.D.1992). A patent ambiguity is detected from the face of the document, whereas a latent ambiguity is found "when the particular words of a document apply equally well to two different objects or some external circumstances makes their meaning uncertain." *Id.* Thus, although Central United presented witnesses stating that they always intended to define "actual charge" to mean the amount paid to the provider, the evidence supports a finding that the company's past behavior defined "actual charge" to mean something different thereby exposing a latent ambiguity.

The same is true with regards to the conclusions that certain statutes were violated. The Director determined violations based on its finding that "actual charge" was ambiguous and that the past practice was the accepted meaning for "actual charge." Because Central United's change in administration supports a finding of a latent ambiguity, each of the Director's conclusions of statutory violation is supported by substantial and competent evidence. However, whether Central United actually violated those laws is a decision pending before the trial court pursuant to section 374.048. Consequently, Central United's third and fourth points are denied.

■ In the fifth point, Central United argues that the Director erred in issuing the Order because he was estopped from asserting violations based on the fact that the Director had "previously affirmed the validity of Central United's *actual charge* payment practices." Central United seeks to attribute preclusive effect to communications to the insureds made by the employees of the Department to the Director. The Director claims that estopping it from finding violations would thwart the legislature's policy to protect Missouri's insureds.

■ Generally, equitable estoppel is not applicable to governmental entities, but may be applied to prevent manifest injustice. *Fraternal Order of Police Lodge No.2 v. City of St. Joseph*, 8 S.W.3d

257, 263 (Mo.App. W.D.1999). However, courts will not apply equitable estoppel against a governmental entity "if it will interfere with the proper discharge of governmental duties, curtail the exercise of the state's police power or thwart public policy." *Id.* It should only be applied when "private parties possess greater equitable rights" than the governmental entity or public official. *Id.* Additionally, the following elements must be shown: an inconsistency between the government's acts before and after the claim arises of the; a party's active reliance on the government's first act; a resulting injury based on the contradiction of the government's first act by the subsequent act; and the inconsistency constitutes affirmative misconduct. *Id.*

Section 376.777.7 allows the Director to later disapprove a policy that has been otherwise deemed approved if it is ambiguous. That section states in relevant part:

> (2) [T]he failure of the director of insurance to take action approving or disapproving a submitted policy form within a stipulated time, not to exceed sixty days from the date of filing, shall be deemed an approval thereof until such time as the director of the department of insurance shall notify the submitting company, in writing, of his disapproval thereof.

> (3) The director of insurance shall approve only those policies which are in compliance with the insurance laws of this state and which contain such words, phraseology, conditions and provisions which are specific, certain and unambiguous and reasonably adequate to meet needed requirements for the protection of those insured. The disapproval of any policy form shall be based upon the requirements of the laws of this state or of any regulation lawfully promulgated thereunder.

Additionally, section 376.780.2 provides for treatment of approved policies that contain ambiguities. It states in part:

> A policy delivered or issued for delivery to any person in this state in violation of sections 376.770 to 376.800 shall be held valid but shall be construed as provided in sections 376.770 to 376.800. When any provision in a policy subject to sections 376.770 to 376.800 is in conflict with any provision of sections 376.770 to 376.800, the rights, duties and obligations of the insurer, the insured and the beneficiary shall be governed by the provisions of sections 376.770 to 376.800.

Consequently, the approval of a policy is not a declaration that the policy does not contain ambiguous terms or otherwise violate the law. Likewise, the government's tacit approval of a methodology does not prevent the government from enforcing laws that the method or practice violates. *See Traders Mut. Fire Ins. Co. v. Leggett,* 284 S.W.2d 586, 589 (Mo.1955).

Moreover, the letters do not definitively approve the new claims administration. One letter from a representative of the Consumer Division informs the insured that whether Central United's interpretation of its policy is correct is a question of fact that the Department could not decide and then explains how the claims administration works under Central United's interpretation of its policy. A second letter from the same division to a different insured informs the insured the Department did not have the authority to determine if Central United's interpretation was correct and recommends the insured obtain legal counsel to address the issue. Another letter to the same insured explains that because there is no law defining "allowable or actual charge," the Department "cannot force the company to provide additional payment on [her] claims." Those letters were dated October 2003, August 2005,

and October 2005, respectively, and were in response to policyholders' inquiries about the change. Central United did not seek the Department's approval before changing the claims administration in February 2003. Accordingly, as correctly stated by the Director, the representations made in the letter do not support estoppel because Central United did not actively rely on the Department's representations in changing its administration of "actual charge" benefits. Central United's fifth point is denied.

■■■■ In the sixth point, Central United argues that the Director erred in issuing the Order because Central United did not receive a fair hearing under section 536.140.2 because the hearing officer and Director were biased and prejudged the issues. We presume that an administrative decision was valid and not the product of an improperly influenced administrative body. *Kukuljan v. Metro. Bd. of Police Comm'rs*, 871 S.W.2d 119, 121 (Mo.App. E.D.1994). The issue is whether Central United showed clear and convincing evidence that the hearing officer was biased to overcome this strong presumption. *See id.* "[A]ny alleged bias or prejudice on the part of the judge, to be disqualifying, must stem from an extrajudicial source." *Fin. Solutions & Assocs. v. Carnahan*, 316 S.W.3d 518, 524 (Mo.App. W.D.2010).

Central United argues that the hearing officer was clearly biased in the Department's favor for the following reasons: (1) the hearing officer rushed through the hearing to get a decision in front of the Director from which he could issue an order before the effective date of certain legislation interpreting "actual charge" consistently with Central United's adopted meaning; (2) the hearing officer denied Central United a continuance to secure the

live testimony of its expert; (3) the hearing officer precluded testimony; (4) the hearing officer also "interrupted and extensively cross-examined" Central United's witnesses; (5) the hearing officer stated that everyone agreed that Central United had changed its interpretation; and (6) the hearing officer questioned the Department's witnesses in depth, thereby assisting them in supplementing the findings for the violations.[7]

■■■■ Under Missouri case law, these reasons are insufficient to overcome the strong presumption that the hearing officer was an impartial decision maker. "The mere fact that rulings are made against a party does not show bias or prejudice on the part of the judge." *Fin. Solutions*, 316 S.W.3d at 524 (citation and internal quotation marks omitted). Although the hearing officer denied Central United's continuance, it granted Central United's alternative request to admit the expert's deposition. The hearing officer excluded evidence and requested for counsel to "move on" because the evidence was cumulative, irrelevant, or both. The exclusion of cumulative evidence does not show bias; in fact, it is required to be excluded. § 536.070(8). As for the hearing officer's statement about the change in interpretation, it was merely a summation of Central United's acts. Finally, a hearing officer is permitted to ask questions during an investigatory hearing pursuant to section 374.205.3(4)(b), in order to determine if the examination report should be modified. There can be no bias based on a hearing officer performing acts consistent with its duties. *See Fin. Solutions*, 316 S.W.3d at 526. Central United's sixth point is denied.

---

7. Notably, Central United does not independently allege that these adverse actions constitute errors justifying reversal; it instead relies on these actions only to show bias.

## Conclusion

Therefore, we reverse the trial court's judgment and affirm the Director's Order as to the record supporting its administrative findings and conclusions. The determinations as to the contracts' ambiguity, the meaning of "actual charges," and whether Central United violated the law as set forth in the Order are for the trial court's resolution in the pending case.

MARTIN and WITT, Judges concur.